374 A.2d 1312

**VALLEY FORGE INDUSTRIES, INC., Appellant,**

**v.**

**ARMAND CONSTRUCTION, INC. and United Surety and Financial Guarantee Co.**

Superior Court of Pennsylvania.

Argued March 19, 1976.

Decided June 29, 1977.

54

Donald B. Corriere, Bethlehem, for appellant.

Lawrence Center, Bethlehem, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court should not have granted summary judgment because it improperly construed the statute of limitations contained in the Public Works Contractors' Bond Law of 1967.[1] This case draws into question the application and interpretation of an act of the General Assembly regulating the affairs of political subdivisions, municipalities, local authorities and the officers, employes and agents thereof. We, therefore, transfer this case to the jurisdiction of the Commonwealth Court.

---

1. Act of Dec. 20, 1967, P.L. 869, § 1 *et seq.*; 8 P.S. § 191 *et seq.* (Supp.1976).

The facts giving rise to the instant case are not in dispute. In October, 1972, appellant, as a subcontractor of Armand Construction, Inc., (hereinafter "Armand") furnished certain labor and materials to repave streets in the Borough of Mucungie, Northampton County, following the installation of sewers. Appellant performed its subcontractual obligations during the weeks of October 16, 23, and 30, 1972, and billed Armand for $37,715.46. On November 20, 1972, Armand paid appellant $31,015.47, and retained the balance pending final approval of the work. The borough engineers refused to approve some of appellant's work, and negotiations ensued which resulted in appellant providing additional labor and materials in June, 1973. Appellant did not submit bills for this additional work and, if submitted, the Authority would have refused payment.

On May 31, 1974, appellant instituted suit against appellee after Armand defaulted. Appellee's sole defense is that the applicable statute of limitations had expired before suit was commenced. The lower court determined that the decision was controlled by the following statute of limitations: "No action may be commenced after the expiration of one year from the day on which the last of the labor was performed or material supplied for the payment of which such action is brought by the claimant." The Public Works Contractors' Bond Law, supra; 8 P.S. § 197(b). The lower court held that the statute of limitations was not extended by the subsequent repairs which appellant performed. It reasoned that because appellant was claiming payment for labor performed before the week of October 30, 1972, and billed before November 20, 1972, appellant could not recover on the bond. The court noted that the statute of limitations begins to run from the date on which the last labor is performed "for which he [the claimant] claims payment" and "for the payment of which such action is brought. . ." On December 11, 1975, an appeal was taken to this Court. The appellee has not objected to this Court's jurisdiction.

The Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 402, 17 P.S. § 211.402 (Supp.1976),

provides: "The Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following cases, . . .: (4) All actions or proceedings . . . where is drawn into question the application, interpretation or enforcement of (i) any act of the General Assembly regulating the affairs of political subdivisions, municipality and other local authorities or other public corporations or of the officers, employes or agents thereof, acting in their official capacity, . . ." The Appellate Court Jurisdiction Act also provides:

"(a) The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the hearing of the appeal, or within such earlier time as may be specified by general rule or rule of court, shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this act, or of any general rule adopted pursuant to section 505 of this act, vesting jurisdiction of such appeal in another appellate court.

"(b) If an appeal or other matter is erroneously taken to or brought in a court which does not have jurisdiction of the appeal or other matter, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof, at the cost of the appellant, petitioner or plaintiff, to the proper court of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in that court on the date erroneously filed in the other court.

"(c) The Superior Court and the Commonwealth Court shall have power pursuant to general rules, on their own motion or upon petition of any party, to transfer any appeal to the other court for consideration and decision with any matter pending in such other court involving the same or related questions of fact, law or discretion." Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503, 17 P.S. § 211.503 (Supp.1976). We must, therefore, make two determinations. First, we must determine whether jurisdiction over this appeal properly lies with the Commonwealth Court. Second, we must decide whether appellee's failure to object to our

jurisdiction warrants our deciding the merits of the case. Section 3 of the Public Works Contractors' Bond Law provides that every "contracting body" shall secure two bonds before entering into any contract in excess of $5,000 for a public works project: (1) a performance bond at 100 percent of the contract price conditioned upon the faithful performance of the contract in accordance with plans and specifications of the contract to protect the contracting body which awarded the contract, and (2) a payment bond for 100 percent of the contract price for the protection of claimants supplying labor and materials to the prime contractor to whom the contract is awarded to insure payment of all subcontractors. Section 2 of the act defines "contracting body" as: "any officer, employe, authority, board, bureau, commission, department, agency or institution of the Commonwealth of Pennsylvania or any State-aided institution, or any county, city, district, municipal corporation, municipality, municipal authority, political subdivision, school district, educational institution, borough, incorporated town, township, poor district, county institution district, other incorporated district or other public instrumentality which has authority to contract for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work." Sections 4, 6 and 7 of the act specify detailed procedures which must be followed by claimants in bringing an action on a bond, including the aforementioned statute of limitations.

The Public Works Contractors' Bond Law contains a carefully constructed set of relationships between the various parties to public works contracts executed by governmental units of this Commonwealth. The law serves two main purposes. First, it is designed to protect the contracting body by assuring faithful performance of the contract. Second, the law provides a substitute remedy for subcontractors who supply labor and materials and who are excluded from the protections afforded by the Mechanics' Lien Law of 1963. See Act of August 24, 1963, P.L. 1175, No. 497, art.

III, § 303(b); 49 P.S. § 1303; *American Seating Co. v. Philadelphia*, 434 Pa. 370, 256 A.2d 599 (1969). An interpretation of this statutory scheme will necessarily affect both existing and future bonds required by the act. We conclude that the Public Works Contractors' Bond Law is an "act of the General Assembly regulating the affairs of political subdivisions, municipality and other local authorities or other public corporations or the officers, employes or agents thereof, acting in their official capacity, . . ." within the meaning of § 402 of the Appellate Court Jurisdiction Act. Thus, jurisdiction over this appeal properly lies with the Commonwealth Court.

Our inquiry does not terminate at this point, however, because the appellee has not filed an objection to our jurisdiction. Section 503(a) of the Appellate Court Jurisdiction Act provides that, in the absence of a jurisdictional objection, jurisdiction is perfected in the court to which the appeal is taken unless the appellate court shall otherwise order. Section 503(b) provides, however, that, if an appeal is erroneously taken to a court without jurisdiction of the appeal, the court to which the appeal is taken *shall* transfer the record thereof to the proper court. These two subsections are in apparent conflict. The first subsection perfects jurisdiction in a court which otherwise would not have jurisdiction; the second specifies that the court without jurisdiction shall transfer the case.

An investigation and understanding of the purposes of § 503 disposes of this seeming conflict. Prior to the adoption of the Appellate Court Jurisdiction Act, it was settled law that parties could not stipulate to appellate court jurisdiction. *Commonwealth v. Yorktowne Paper Mills, Inc.*, 419 Pa. 363, 214 A.2d 203 (1965). Furthermore, jurisdiction could not be conferred through approval of such agreements by the court. *Commonwealth v. Yorktowne Paper Mills, Inc., supra; Fenerty Disbarment Case*, 356 Pa. 614, 52 A.2d 576, cert. denied, 332 U.S. 773 (1947). However, when the legislature established the separate jurisdictions of the Supreme Court, the Commonwealth Court, and the Superior

Court, it recognized that two distinct problems could arise. First, if a party inadvertently or unwittingly appealed to the wrong court, his appeal time might run before the error was discovered and he might lose his right of appeal. See Act of July 31, 1970, P.L. 673, No. 223, art. V, § 502; 17 P.S. § 211.502 (Supp.1976); *West Penn Tower Company v. Goddard*, 460 Pa. 551, 333 A.2d 909 (1975); *Nardo v. Smith*, 448 Pa. 38, 292 A.2d 377 (1972); *Luckenbach v. Luckenbach*, 443 Pa. 417, 281 A.2d 169 (1971); *Commonwealth v. Yorktowne Paper Mills, Inc., supra; Scharfman v. Philadelphia Transportation Co.*, 234 Pa.Super. 563, 340 A.2d 539 n. 7 (1975). Second, the legislature sought to protect appellate court decisions from collateral attack in those cases where neither party objected to jurisdiction. See generally Restatement of the Law of Conflicts (Second) § 92. To avoid these two pitfalls, the legislature provided a flexible and efficient means of transferring cases from the court to which the appeal was taken to the court to which the legislature allocated subject matter jurisdiction. Appellate Court Jurisdiction Act, supra; 17 P.S. § 211.503(b) & (c). At the same time, it reserved to the court to which the appeal was erroneously taken the discretionary power to hear and decide the merits of the appeal when no jurisdictional objection is raised. Appellate Court Jurisdiction Act, supra; 17 P.S. § 211.503(a). See *Commonwealth v. Rucco*, 229 Pa.Super. 247, 249–50, 324 A.2d 388 (1974).

■ We must now decide whether to exercise our discretionary power to hear an appeal concerning subject matter which is in the jurisdiction of the Commonwealth Court. At the outset, we note that the parties will suffer some additional expense and that a definitive decision will be delayed if we transfer the case to our coordinate court. These considerations must be balanced against other factors. The question presented is a matter of important public policy affecting existing and future bonds on thousands of public works projects. While we have always considered decisions of the Commonwealth Court to be persuasive authority in this Court and we can assume that our sister Court gives

similar weight to our decisions, there is no way to guard against the possibility that two inconsistent lines of authority might develop concerning the same subject matter. It would be far better for this Court to defer to the Commonwealth Court, which has been designated by the legislature as the appropriate forum for resolving disputes arising out of an interpretation of statutes regulating the affairs of local governments and agencies, at least until the law becomes settled in this particular area. Finally, we note that the legislature has established a division of labor among the appellate courts of this Commonwealth, in part, to distribute the work so that the judicial resources of no one court become overburdened. If we too freely accept appeals concerning subject matter allocated to another appellate court, we disrupt the legislatively ordained division of labor. Of course, we will be required to examine each potential transfer on a case-by-case basis. There may be cases in which factors weigh more heavily against transfer. However, this is not such a case.

Appeal and record to be transferred to the jurisdiction of the Commonwealth Court.

VAN der VOORT, J., files a dissenting opinion in which WATKINS, President Judge, joins.

VAN der VOORT, Judge, dissenting:

Our Court, in this case, heard oral arguments. The Members of our Court have examined the briefs. It became my responsibility to draft an Opinion. I prepared one and supplied a copy to my colleagues and now we are transferring the case to the Commonwealth Court.

No party has objected to the jurisdiction of our Court and jurisdiction has been perfected in our Court. (See 17 P.S. 211.503(a) ).

I respectfully dissent from this action which our Court is taking. No question of the power and authority of the Commonwealth or any of its agencies or any governmental subdivisions or quasi governmental bodies to act is involved in this case.

The simple issue involved is the determination of what is the "day on which the last labor was performed or material was supplied" (See the Bond Law of 1967, 8 P.S. 197(b)), where a contractor was summoned back to the job "by an owner" to make repairs or adjustments after the ostensible date of completion. My Opinion held that said day on which the last labor was performed or material was supplied was the day on which the repairs or adjustments were completed. I believe that by transferring this case at this late date we are not serving the cause of judicial economy, we are not helping any of the parties, nor are we clarifying the often faint line of Appellate jurisdiction between our Court and the Commonwealth Court, hence my dissent.

WATKINS, President Judge, joins in this Dissenting Opinion.