518 A.2d 1231

**Leon NEWMAN and Donna Newman, Appellees,**

v.

**Joseph THORN, Individually and as Mayor of Morton Borough, Judith Bechetel, James McCaffrey, Joseph Savukinas, George Dickerson, Paul Lytle, Individually and as Councilman of Morton Borough, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1986.

Filed Dec. 12, 1986.

Maria Zulick, Philadelphia, for appellants.

Jon Auritt, Media, for appellees.

Before CIRILLO, President Judge, and MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

This appeal challenges an order of the Delaware County Court of Common Pleas vacating a grant of summary judgment. Appellants raise issues that the General Assembly has committed to the exclusive jurisdiction of the Commonwealth Court. We therefore transfer this case to that court.

On February 16, 1983, appellant, Joseph Thorn, Mayor of the Borough of Morton, suspended appellee, Leon Newman, from his position as a police officer for the Borough. Appellants, James McCaffrey, Joseph Savukinas, George Dickerson and Paul Lytle, all members of the Borough Council, voted on March 9, 1983 to discharge Mr. Newman. On appeal pursuant to 53 P.S. § 46191, the Borough Civil Service Commission, after extensive hearings, decided to uphold Mr. Newman's discharge. The Delaware County Court of Common Pleas quashed as untimely Mr. Newman's appeal from the Commission's decision.

Nonetheless, while the matter was before the Borough Civil Service Commission, Mr. Newman and his wife, appellee Donna Newman, brought this separate action in the court of common pleas. In their complaint, the Newmans allege that appellants, by seeking or approving Mr. Newman's discharge, intended only to retaliate against Mr. Newman for his outspoken opposition to the actions of Mayor Thorn and "certain Morton public officials." The Newmans also allege that appellants either engaged in or condoned other "malicious" conduct, including an intrusive investigation of the Newmans' private affairs by Mayor Thorn. For each of these separate incidents of alleged wrongdoing, the Newmans seek relief on both tort and federal civil rights theories.

Appellants responded by filing a motion for summary judgment at the close of the pleadings. In support of their motion, appellants advanced three arguments: (1) the proceedings before the Borough Civil Service Commission pursuant to the Borough Code, 53 P.S. § 46010 *et seq.* from which the Newmans could seek review in the court of common pleas and then the Commonwealth Court, bars this collateral challenge to Mr. Newman's dismissal; (2) federal case law grants state and local officials qualified immunity from suit brought under 42 U.S.C. § 1983 for deprivation of federal civil rights; (3) the Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8545, grants employees of local government units, including elected officials, "official immunity" from "civil damages" actions. On November 22, 1985, the trial court granted appellants' motion for summary judgment, but only "to the extent of the ... claim relating to the dismissal of Mr. Newman." By order of December 9, 1985, however, the court vacated its November 22, 1985 grant of summary judgment and ordered the parties to complete discovery within 60 days. Appellants filed a timely notice of appeal from that order.

Appellees, the Newmans, challenge the jurisdiction of *any* appellate court to hear appellants' case. Appellees agree with the trial court that this appeal is interlocutory. They argue that the November 22, 1985 order granting summary judgment "to the extent of the ... claim relating to the dismissal of Mr. Newman" constituted a grant of partial summary judgment only. This court will quash as interlocutory an appeal from an order granting partial summary judgment if the order does not put the appellant out of court on his or her cause of action. *See Dudash v. Palmyra Borough Authority*, 335 Pa.Super. 1, 483 A.2d 924 (1984); *Canulli v. Allstate Ins. Co.*, 315 Pa.Super. 460, 462 A.2d 286 (1983). Taking this proposition one logical step further, appellees reason that we should quash as interlocutory an appeal from and order *vacating* partial summary judgment. We are inclined to agree with appellees' conclusion that a court cannot, by some legal artifice, create an appealable order merely by vacating a nonap-

pealable one. Appellees reach this conclusion, however, by incorrectly assuming that the November 22, 1985 order granting "partial" summary judgment was not appealable.

▮ In determining what constitutes a final appealable order, we must look beyond labels and generalities to the "practical ramifications" of the order in question. *Jackson v. Moultrie,* 288 Pa.Super. 252, 255, 431 A.2d 1033, 1035 (1981). *Accord Pennsylvania Turnpike Commission v. Atlantic Richfield Co.,* 482 Pa. 615, 394 A.2d 491 (1978); *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975); *Praisner v. Stockner,* 313 Pa.Super. 332, 459 A.2d 1255 (1983). We must inquire whether, in effect, the order puts the aggrieved party out of court on his or her cause of action. *See Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985); *Praisner v. Stockner, supra.* As we recognized in *Praisner v. Stockner,* however, our liberal rules of pleading complicate the inquiry. Pennsylvania Rule of Civil Procedure 1020(a) encourages consolidation of lawsuits by allowing the plaintiff to plead more than one cause of action against the same defendant. Moreover, on any one cause of action, the plaintiff may assert as many theories of recovery as he or she deems applicable. The sometimes blurry distinction between "cause of action" and "theory of recovery" often controls the issue of whether an order is interlocutory or final:

Where separate and distinct causes of action have been joined under permissive joinder standards of Pa. R.C.P. 1020(a) ... the appealability of a judgment entered on one or more but not all counts must be distinguished from the situation in which separate counts have been used to state alternate theories for recovery on the same cause of action. In the former situation the summary judgment has terminated litigation upon a separate and distinct cause of action. In the latter, an order dismissing or entering judgment on one or more but not all counts of a complaint is interlocutory, for the plaintiff can, nevertheless, proceed to a determination on the un-

derlying cause of action. *See: J.A. & W.A. Hess, Inc. v. Hazle Township,* 465 Pa. 465, 470–471, 350 A.2d 858, 861–862 (1976). Thus, the dismissal of a count alleging damages for breach of an express contract is not appealable if an alternate count seeking to recover the same damages based on *quantum meruit* remains undecided. *J.A. & W.A. Hess, Inc. v. Hazle Township, supra.* Similarly, there is no formal order where a count averring negligence has been dismissed but there remains undetermined a count alleging liability for a defective product under Section 402A of the Restatement (Second) of Torts. *Praisner,* 313 Pa.Super. at 341, 459 A.2d at 1260.

Although the phrase "cause of action" eludes precise definition, for our purposes it means "the fact or facts which establish or give rise to a right of action the existence of which affords a party a right to judicial relief." 2 Stand.Pa.Prac.2d § 6:1 (1981). Appellees in their complaint have alleged several distinct causes of action.[1] One of these causes is the retaliatory discharge of Mr. Newman from the Morton Borough Police force. The facts that appellees have set forth regarding the discharge, if proved, would certainly afford appellees "a right to judicial relief," absent a valid defense.

■ We find that the November 22, 1985 order granting summary judgment completely cut off this right. The court granted judgment "to the extent of the . . . claim relating to the dismissal of Mr. Newman." This language, although imprecise, had the practical effect of putting appellees out of court on any cause of action arising from the alleged retaliatory discharge. We recognize that the November 22 order did not put appellees out of court completely. Other

---

1. Appellees unfortunately failed to comply with the requirements of Pa.R.C.P. 1020. Rule 1020(a) requires that a plaintiff who alleges more than one cause of action in a single complaint must state each cause "and any special damages related thereto . . . in a separate count containing a demand for relief." Appellees did not assign each cause of action to a separate count in their complaint. Consequently, the complaint is a confusing hodgepodge of factual allegations, claims for relief and theories of recovery. Compliance with Rule 1020(a) would have eliminated much of the confusion.

causes of action appear to have survived, including the one that arose from the alleged investigation of the Newmans' private affairs by Mayor Thorn. Nonetheless, these causes stem from allegations of wrongdoing distinct from those concerning the discharge of Mr. Newman. The November 22 order granting summary judgment eliminated one of several independent causes of action. In *Praisner, supra,* 313 Pa.Superior Ct. at 343–44, 459 A.2d at 1261, we concluded that "[n]either the finality nor the appealability of such a judgment is destroyed merely because the cause of action in which the judgment was entered was one of several causes of action which had been joined in the same complaint." We reach the same result in this case.

Appellants, of course, did not appeal the order granting summary judgment in their favor. They appealed the December 9, 1985 order *vacating* that judgment. Pennsylvania Rule of Appellate Procedure 311(a)(1) permits an interlocutory appeal as of right from "[a]n order opening, vacating or striking off a judgment." This court has held that an order vacating a final appealable grant of summary judgment falls within the ambit of Rule 311(a)(1). *See Hunter v. Employers Ins. of Wausau,* 347 Pa.Super. 227, 500 A.2d 490 (1985). We therefore conclude that the December 9, 1985 order, filed December 11, was appealable.

 Because appellants' case is ripe for appellate review, and because appellees have not objected to the choice of appellate forum, our jurisdiction over this appeal is perfected "notwithstanding any provision of law vesting jurisdiction ... in another appellate court." Pa.R.A.P. 741(a). *See also* 42 Pa.C.S. § 704(a).[2] Even if we find that the appeal falls within the bailiwick of the Commonwealth Court, we have discretion to decide the case on the merits rather than transfer it. *See Osser v. City of Philadelphia,* 295 Pa.Super. 447, 441 A.2d 1317 (1982) (*per curiam*); *Commonwealth v. Sensi,* 287 Pa.Super. 452, 430 A.2d 691

**2.** This court may raise *sua sponte* the issue of whether we should transfer an appeal to the Commonwealth Court. *See Brady Contracting Co. v. West Manchester Twp. Sewer Auth.,* 338 Pa.Super. 144, 487 A.2d 894 (1985).

(1981). This court occasionally will retain jurisdiction, in the interest of judicial economy, over appeals that the parties should have brought to our sister court. *See, e.g., Overstreet v. Borough of Yeadon,* 327 Pa.Super. 291, 475 A.2d 803 (1984); *Schultz v. City of Philadelphia,* 314 Pa.Super. 194, 460 A.2d 833 (1983). Judicial economy, however, must compete against other interests. In particular, we must consider (1) whether retaining jurisdiction will disrupt the "legislatively ordained division of labor" between the intermediate appellate courts and (2) the possibility of establishing two conflicting lines of authority on one subject. *See Graffigna v. City of Philadelphia,* 351 Pa.Super. 74, 505 A.2d 271 (1986); *Karpe v. Borough of Stroudsburg,* 315 Pa.Super. 185, 461 A.2d 859 (1983); *Valley Forge Industries Inc. v. Armand Construction Inc.,* 248 Pa.Super. 53, 374 A.2d 1312 (1977). Of course, as with any exercise of discretion, we must "examine each potential transfer on a case-by-case basis." *Valley Forge Industries, supra,* 248 Pa.Superior Ct. at 61, 374 A.2d at 1316.

Chapter Seven of the Judicial Code, 42 Pa.C.S. § 701 *et seq.,* sets forth the "legislatively ordained division of labor" between appellate courts in Pennsylvania. The General Assembly has given appellate jurisdiction to both the Superior and the Commonwealth Courts over appeals from the courts of common pleas. The Superior Court, however, exercises a general jurisdiction over all appeals from common pleas "regardless of the nature of the controversy." 42 Pa.C.S. § 742. From this broad grant of jurisdiction the General Assembly excepted only those classes of appeal that lie within the exclusive jurisdiction of the Supreme or Commonwealth Courts. *Id.* The Commonwealth Court, on the other hand, exercises a narrowly circumscribed jurisdiction. *See* 42 Pa.C.S. § 762. Section 762(a) enumerates seven specific categories of appeal from the courts of common pleas over which the Commonwealth Court has exclusive jurisdiction. Thus, the General Assembly consciously removed a group of cases from the court of general appellate jurisdiction and committed them to a court of specialized appellate jurisdiction. This more evenly distrib-

utes the burden of the case load between intermediate appellate courts and also allows the Commonwealth Court to develop, as it has done so well, expertise in handling a complex body of case law.[3] We should not disregard the jurisdictional scheme lightly.

In this case, we are concerned with only one of the seven categories of appeal from common pleas that the General Assembly has assigned to the Commonwealth Court. Subsection 762(a)(7) gives the Commonwealth Court exclusive jurisdiction over appeals involving "immunity waiver matters." The subsection defines "immunity waiver matters" as "[m]atters conducted pursuant to Subchapter C of Chapter 85 (relating to actions against local parties)." 42 Pa.C.S. § 762(a)(7). "Subchapter C of Chapter 85" refers to what is known popularly as the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 *et seq.* Before the trial court, appellants raised their immunity under the Tort Claims Act in their motion for summary judgment. On appeal, appellants again have raised their immunity under the Act, this time in opposition to the order vacating summary judgment. Appellees, for their part, have never disputed that appellants fall within the broad category of government unit "employees" to whom the immunity provisions of Chapter 85 applies.[4] In short, appellees' ability to bring this action

---

**3.** We have not hesitated to transfer cases in deference to our sister court's expertise. *See, e.g., Donaldson v. Ritenour,* 354 Pa.Super. 568, 512 A.2d 686 (1986); *Eldred Twp. v. Monroe County,* 330 Pa.Super. 74, 478 A.2d 1357 (1984); *Osser v. City of Philadelphia,* 295 Pa.Super. 447, 441 A.2d 1317 (1982); *Commonwealth v. Sensi,* 287 Pa.Super. 452, 430 A.2d 691 (1981). This factor should weigh more heavily in our consideration when the particular area of law is unsettled. *See Valley Forge Industries, Inc. v. Armand Construction, Inc.,* 248 Pa.Super. 53, 61, 374 A.2d 1312, 1316 (1977).

**4.** Section 8501 of the Act, 42 Pa.C.S. § 8501, defines "employee" as follows:

Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including ... any elected or appointed officer, member of a government body or other person designated to act for the government unit.

depends on whether the Political Subdivision Tort Claim Act will allow it. We therefore find that this case is a matter "conducted pursuant to Subchapter C of Chapter 85," and that it falls squarely within the jurisdiction of the Commonwealth Court. *See Brady Contracting Co. v. West Manchester Twp. Sewer Auth., supra.*

We recognize that appellants have raised issues other than their state Tort Claims Act immunity. The General Assembly must have anticipated, however, that issues other than immunity would arise in tort actions brought against political subdivisions and officials. If this court retained jurisdiction over every appeal that combined issues within our broad jurisdiction with issues concerning Tort Claims Act immunity, we would never transfer any immunities cases. This surely would disrupt the "legislatively ordained division of labor." On the other hand, if resolution of the immunities issue merely requires this court to apply well-settled principles of law, transfer to the Commonwealth Court serves little purpose. *See Valley Forge Industries, supra,* 248 Pa.Super. at 61, 374 A.2d at 1316. Appellants here argue that the allegations in appellees' complaint, even if proved, are insufficient under both state and federal law to override appellants' claim of immunity. Although the Commonwealth Court has considered similar arguments,[5] we find the law in this area far from well settled.

Appellees' complaint identified each of the appellants in their official capacity. We, of course, reserve for the Commonwealth Court the issue of whether appellants have waived or otherwise rendered inapplicable the immunity provisions of the Act.

5. *See, e.g., Acker v. Spangler,* 92 Pa.Commw. 616, 500 A.2d 206 (1985); *Mascaro v. Youth Study Center,* 89 Pa.Commw. 388, 492 A.2d 786 (1985); *Morris v. Musser,* 84 Pa.Commw. 170, 478 A.2d 937 (1984); *Swartz v. Masloff,* 62 Pa.Commw. 522, 437 A.2d 472 (1981). This court also has addressed this issue, although cursorily. *See Overstreet v. Borough of Yeadon,* 327 Pa.Super. 291, 475 A.2d 803 (1984). Neither this court nor the Commonwealth Court has considered the relationship between immunity from suit under the federal Civil Rights Act, 42 U.S.C. § 1983, and immunity under the state Tort Claims Act, 42 Pa.C.S. § 8541 *et seq. Cf. Hardmon v. County of Lehigh,* 613 F.Supp. 649, 654 n. 3 (E.D.Pa.1985).

■ Moreover, as we noted in *Brady Contracting, supra,* 338 Pa.Super. at 147–48 n. 1, 487 A.2d at 896 n. 1, the General Assembly gave the Commonwealth Court broad jurisdiction over cases involving "immunity waiver matters," 42 Pa.C.S. § 762(a)(7). The original version of Subsection 762(a)(7), which the Assembly added to Section 762 in 1980, defined "immunity waiver matters" as "[m]atters *in which immunity has been waived* pursuant to Subchapter C of Chapter 85." A 1982 amendment recast the subsection in its current form. By redefining "immunity waiver matters" as "matters *conducted* pursuant to Subchapter C of Chapter 85," the Assembly made clear its intent to expand the number of tort actions within the Commonwealth Court's exclusive jurisdiction. *See Brady Contracting, supra,* 338 Pa.Superior Ct. at 147–48 n. 1, 487 A.2d at 896 n. 1 ("under the present language all that is necessary is that a local agency be sued in tort which then invokes the Commonwealth Court's appellate jurisdiction since the case will be governed by ... the Tort Claims Act"). We therefore conclude that the mere presence of issues other than immunity will not justify a refusal to transfer this case.[6]

We also must consider the possibility of establishing two conflicting lines of authority on one subject. This concern looms particularly large when the subject is sovereign immunity. Our supreme court has observed that "[i]n order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by fear of unpredictable liability." *DuBree v. Commonwealth,* 481 Pa. 540, 544, 393 A.2d 293, 295 (1978). Nothing would render more unpredictable the liability of public servants than having two courts of equal authority construe the Tort Claims Act inconsistently. We must take extraordinary care to avoid undermining the primary purpose of official immunity. The

---

**6.** We recognize that the Commonwealth Court could dispose of this appeal without reaching the immunity issues. Nonetheless, we must transfer the entire case. If we stayed transfer pending our resolution of the other issues, assuming we could do so, we would invite confusion and delay.

General Assembly certainly had this purpose in mind when it vested the Commonwealth Court with broad and exclusive jurisdiction over cases involving the Tort Claims Act. In *Brady Contracting, supra,* 338 Pa.Super. at 148, 487 A.2d at 897, we concluded that the "obvious legislative intent in granting such exclusive appellate jurisdiction to the Commonwealth Court is to ensure a uniform interpretation and application of the Political Subdivision Tort Claims Act." Again, if we had only to apply well-settled principles of law, we would have less reason to transfer this case. However, because we lack clear guideposts from the Commonwealth Court, we cannot disregard the possibility of establishing conflicting precedent.[7]

■ Against these factors we weigh the interest in judicial economy. We understand that transfer will delay the disposition of the case. Nonetheless, "the inconvenience caused to the parties by this delay is outweighed by the benefit brought about by providing a consistent body of law in an area we believe the Legislature clearly intended would be the province of our sister court." *Graffigna, supra,* 351 Pa.Super. at 78, 505 A.2d at 273. Moreover, this is the first and hopefully the only appellate-level transfer of this case. We have considered the lack of previous transfer a significant factor in evaluating the need for judicial economy. *See Graffigna, supra,* 351 Pa.Superior Ct. at 78, 505 A.2d at 273; *Karpe, supra,* 315 Pa.Super. at 189, 461 A.2d at 861; *Commonwealth v. 84–Qt. Btls. Bianco Di Verona Wine,* 250 Pa.Super. 544, 378 A.2d 1282 (1977). Although we would not rely exclusively on this factor, we weigh it along with the other factors that support transfer in this case.

For the above reasons, we transfer this appeal to the Commonwealth Court for disposition on the merits.

Appeal transferred.

7. As we noted recently in *Graffigna v. City of Philadelphia,* 351 Pa.Super. 74, 78, n. 4, 505 A.2d 271, 273 n. 4 (1986), our decision in *Casey v. Geiger,* 346 Pa.Super. 279, 499 A.2d 606 (1985), which interprets the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542, directly conflicts with the opinion of Judge Rogers in *Johnson v. SEPTA,* 91 Pa.Commw. 587, 498 A.2d 22 (1985). We hope to avoid a similar problem by transferring this case.