NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4056
_____

UNITED STATES OF AMERICA

v.

EDWARD KAPLAN,
Aka Pooh

Edward Kaplan, Appellant

_____

No. 11-1351
_____

UNITED STATES OF AMERICA

v.

LEONARD MASON,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 2-06-cr-00719-001 and 002
(Honorable Berle M. Schiller)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 4, 2013

Before:  SCIRICA, JORDAN, and ROTH, *Circuit Judges.*

(Filed: May 24, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Edward Kaplan and Leonard Mason appeal their convictions for conspiracy to distribute cocaine and related offenses. Mason also appeals his sentence. We will affirm.

I.

In 2005, law enforcement authorities commenced investigating a drug trafficking operation centered in Chester, Pennsylvania. Investigators obtained information through wiretaps and from six confidential informants, one of whom described Kaplan as a major cocaine trafficker who sold him cocaine. On the basis of that information, which Pennsylvania State Troopers Michael P. Skahill and Sean Regan set forth in a detailed 355-page affidavit, a judge of the Pennsylvania Superior Court signed an order on April 19, 2006, authorizing a wiretap of a cell phone used by Kaplan. The same judge subsequently signed an order authorizing a wiretap of a cell phone used by Mason and several orders authorizing interception or continued interception of Kaplan's phones. These orders were all based on affidavits of Skahill and Regan that were similar to their April 19th affidavit, but included updated facts relevant to each particular request.

From the wiretaps, Skahill and Regan learned that Mason would be transporting cocaine from New York City to Chester on July 19, 2006, and notified their colleagues to stop his minivan. Trooper Kevin Shanahan stopped Mason's minivan on Interstate 95 and informed Mason that he stopped him for tailgating. The trooper then informed Mason that

he was seizing the minivan because Mason's driver's license was suspended. Skahill and Regan then applied for a search warrant, employing an affidavit similar to their previous affidavits. After obtaining the warrant, investigators searched the minivan and found approximately three kilograms of cocaine.

On November 20, 2006, Kaplan was arrested. The next day, the same Superior Court judge issued search warrants for a residence of Kaplan's at 122 West Wyneva Street, in Philadelphia, as well as an apartment and car of Kaplan's. These warrants were based on an affidavit prepared by Skahill and Regan similar to their previous affidavits. While waiting for the warrant to be issued, Trooper Joseph F. Thompson encountered several people at the Wyneva Street residence who told him they rented rooms there and signed consent forms to have their rooms searched. Thompson searched the residence. In the kitchen, kitchen bathroom, hallway closet, living room, basement, and a room that was apparently Kaplan's, Thompson found 600 grams of cocaine, scales, $2,600 in cash, and indicia of Kaplan's residency, such as letters and magazines addressed to him and photos of him. Similar evidence was found in the apartment and car.[1]

The jury convicted Kaplan and Mason of conspiracy to distribute five kilograms or more of cocaine and related offenses. The court sentenced Kaplan to 120 months' imprisonment and Mason to the statutory mandatory minimum, based on his prior felony drug conviction, of 240 months' imprisonment. In their post-trial motions for acquittal and/or new trial, appellants contested the denial of their suppression motions and the

---

[1] Kaplan and Mason filed pretrial motions to suppress the evidence obtained through the wiretaps and searches that were denied.

sufficiency of the evidence. They also contended the state troopers presented prejudicial opinion testimony. On appeal, they assert the same trial errors, as well as ineffective assistance of counsel (Mason) and lack of jurisdiction on the part of the Superior Court judge to issue the wiretap orders, which in any event lacked probable cause. Mason also contests his sentence.

## II.[2]

### A.

We exercise plenary review over denials of motions to suppress. *United States v. Loy*, 191 F.3d 360, 365 (3d Cir. 1999).

### 1.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, governs wiretap orders. An application for a wiretap order must be made to "a judge of competent jurisdiction," 18 U.S.C. § 2518(1), defined as a federal district or circuit court judge or "a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications." 18 U.S.C. 2510(9). As a Superior Court judge, the judge who signed the wiretap orders was authorized by state statute to do so. *See* 18 Pa. Cons. Stat. Ann. § 5708 (stating the government "may make written application to any Superior Court judge for an order authorizing the interception of a wire, electronic or oral communication . . . for an investigation involving suspected criminal activities when

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

such interception may provide evidence" regarding the commission of specified offenses, including those set forth under § 13(a) of The Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa. Cons. Stat. Ann. § 780-113(a), which prohibits, *inter alia*, "[t]he manufacture, sale or delivery, holding, offering for sale, or possession of any controlled substance . . . .").

Appellants contend the Superior Court is not a "court of general criminal jurisdiction" because it is not a court of original jurisdiction. Appellants are incorrect. General jurisdiction means jurisdiction over all causes of action, in contrast to limited jurisdiction, "which is confined to particular causes, or which can be exercised only under the limitations and circumstances prescribed by the Statute." *Midwest Piping & Supply Co. v. Thomas Spacing Mach. Co.*, 167 A. 636, 638-39 (Pa. Super. Ct. 1933) (quotation marks omitted). The Pennsylvania Superior Court has "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas" except classes of appeals carved out for the exclusive jurisdiction of other courts, 42 Pa. Cons. Stat. Ann. § 742, meaning it is a "court of general appellate jurisdiction." *Newman v. Thorn*, 518 A.2d 1231, 1235 (Pa. Super. Ct. 1986).

2.

The same Fourth Amendment standards govern finding probable cause for a wiretap order and for a search warrant. *United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983). To find probable cause, a magistrate "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a

5

particular place." *Ill. v. Gates*, 462 U.S. 213, 238 (1983). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* at 239. Accordingly, a bare-bones affidavit, which makes "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause," is insufficient. *Id.* (citing the following as examples of bare-bones affidavits: the affiant "has cause to suspect and does believe" and the affiants "have received reliable information from a credible person and believe") (quotation marks omitted). Beyond bare-bones affidavits, "this area simply does not lend itself to a prescribed set of rules." *Id.* Instead, a "flexible, common-sense standard . . . better serves the purposes of the Fourth Amendment's probable cause requirement." *Id.* We review the probable cause determination with some deference, deciding only whether the magistrate had a substantial basis to find probable cause. *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).

A judge may enter a wiretap order "if the judge determines on the basis of the facts submitted by the applicant" for the order that, *inter alia*, "(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense . . . ; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception." 18 U.S.C. § 2518(3). Appellants contend the affidavits supporting the wiretap applications were insufficient because they consisted of unsupported opinions and conclusions about cryptic wiretapped phone conversations containing no explicit reference to drugs. This "absence," they contend, demonstrated that wiretapping would not yield communications

concerning drug trafficking. Appellants are incorrect.

An affidavit was "a far cry from bare bones" when it set forth a confidential informant's tip "and detailed officers' subsequent extensive investigation, including verification of criminal, real estate and motor registry records, and observations of drug transactions and other activity evocative of drug dealing." *Stearn*, 597 F.3d at 562 (quotation marks omitted). "Statements in an affidavit may not be read in isolation – the affidavit must be read as a whole." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (quotation marks and brackets omitted). "The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers." *Id.* (quotation marks omitted).[3] A finding of probable cause may be based upon intercepted conversations that "are somewhat cryptic and ambiguous" when an investigating office has explained the "meaning of various terms" in its affidavit. *United States v. Principie*, 531 F.2d 1132, 1138 (2d Cir. 1976). Moreover, prior arrests or convictions can help establish probable cause, "particularly where the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover." *Stearn*, 597 F.3d at 557 (quotation marks omitted).

The affidavits of Skahill and Regan, experienced narcotics investigators, explained in detail their extensive investigation. Six confidential informants informed investigators about the cocaine trafficking operations of Jamille Barksdale, Troy Cauthorn, Burnie

---

[3] Kaplan contends the affiants provided improper opinion testimony under Fed. R. Evid. 702, but he concedes the rule does not apply to wiretap application affidavits.

Majeed, and Kaplan.[4] Investigators found Barksdale, Cauthorn, and Majeed had prior

arrests and convictions for drug trafficking offenses. A confidential informant made

controlled purchases of cocaine from Barksdale. Barksdale used his cell phone to arrange

the drug-sale meetings, but did not mention drugs explicitly in those conversations.

Investigators obtained wiretaps of phones used by Barksdale, Majeed, Cauthorn, and

others, and overheard conversations, including those with Kaplan and Mason, that

contained consistent patterns the affiants explained were evocative of drug trafficking.

The conversations were frequent, cryptic, and repeatedly used code language, such as

referring to a particular meeting location as "where we go to sleep at," referring to

Kaplan as "whatchacallit," and referring to drug transactions as "kick it." The affiants

explained the use of this jargon showed the speakers were experienced drug traffickers

who understood the need to be cautious. *See United States v. Gibbs*, 190 F.3d 188, 211

(3d Cir. 1999) ("Because the primary purpose of coded drug language is to conceal the

meaning of the conversation from outsiders through deliberate obscurity, drug traffickers'

jargon is a specialized body of knowledge and thus an appropriate subject for expert

testimony."). Based on the code language, surveillance teams followed Kaplan, Mason,

---

[4] Kaplan contends the confidential informant who provided information about him provided stale information: the informant "related that as recently as approximately two years [before summer or fall 2005, the informant] had personally purchased kilogram quantities of cocaine from Edward Kaplan." But the informant also told the police Kaplan was a major cocaine trafficker, and the informant had seen Kaplan in possession of large amounts of cocaine and had heard from other drug traffickers that they had purchased kilogram quantities of cocaine from Kaplan. Kaplan relies upon *United States v. Zimmerman* for the proposition that stale information in an affidavit may not support a finding of probable cause. 277 F.3d 426, 434 (3d Cir. 2002). But *Zimmerman* also

and others to meetings at which affiants believed drug transactions occurred.

Accordingly, the affidavits provided a substantial basis to find probable cause to issue the wiretap orders. *See United States v. Burton*, 288 F.3d 91, 98-99 (3d Cir. 2002) (holding an informant's tip combined with facts showing a drug transaction was occurring when "view[ed] . . . through the lens of the Task Force's significant experience with similar transactions" provided sufficient evidence to find probable cause).[5]

From the wiretap of Mason's phone, Skahill and Regan learned Mason would be transporting cocaine from New York City to Chester on I-95 on July 19, 2006. That knowledge, as well as their knowledge set out in the affidavits supporting the wiretap orders, provided a substantial basis for finding probable cause to search Mason's minivan. Skahill and Regan's knowledge supporting probable cause was imputed to Shanahan, *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008); *United States v. Belle*, 593 F.2d 487, 497 n.15 (3d Cir. 1979), regardless of the reason Shanahan provided for stopping and searching the minivan. *United States v. Williams*, 627 F.3d 247, 253 (7th Cir. 2010); *United States v. Chavez*, 534 F.3d 1338, 1348 (10th Cir. 2008); *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759-60 (5th Cir. 1999). Because there was probable

_____

explained information about a continuing offense is not stale. *Id.* The affidavits provided ample basis to find Kaplan was engaged in a continuing offense of drug trafficking.
[5] Kaplan contends the Pennsylvania Superior Court judge did not read the entire affidavit each time he provided new or extensions of wiretap orders, but only the portion added since the previous wiretap order or progress report. Even if so, this would not have undermined the judge's role as "a neutral and detached magistrate." *Gates*, 462 U.S. at 240 (quotation marks omitted). The judge received the updated affidavits in progress reports he received every ten days and as part of each wiretap application. Kaplan fails to identify any substantive differences, other than the updates, between each version of the affidavit.

cause to believe Mason's minivan contained cocaine, the police did not need a warrant to search it. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."). Accordingly, the police had the choice of making an immediate warrantless search of the minivan or seizing it and holding it without a warrant "for whatever period [wa]s necessary to obtain a warrant for the search." *Chambers v. Maroney*, 399 U.S. 42, 51 (1970). The seizure of the minivan pending issuance of the search warrant was "reasonable under the Fourth Amendment." *Id.* at 52.

3.

A motion to suppress evidence must be made before trial. Fed. R. Crim. P. 12(b)(3). Any such motion not made before the court's deadline for pretrial motions is waived, but "[f]or good cause, the court may grant relief from the waiver." Fed. R. Crim. P. 12(e); *United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008) ("[U]nder Rule 12 a suppression argument raised for the first time on appeal is waived (*i.e.,* completely barred) absent good cause."). We review the District Court's denial of relief under Rule 12(e) for abuse of discretion. *United States v. Maury*, 695 F.3d 227, 251 (3d Cir. 2012) ("[W]e review a district court's application of the Federal Rules of Criminal Procedure . . . for an abuse of discretion."); *United States v. Kessee*, 992 F.2d 1001, 1002 (9th Cir. 1993) (reviewing for abuse of discretion the denial of a motion to suppress "because it was filed after the trial had begun").

While Kaplan made a pretrial motion to suppress the evidence stemming from the

10

search of 122 West Wyneva Street, he did not contend the search warrant for the property was invalid for lack of particularity until trial. Accordingly, the issue was waived. *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) ("[A] defendant may not introduce new theories of suppression on appeal that were never argued below.") (quotation marks omitted).

Kaplan contends there was good cause to grant relief from waiver because he did not realize until trial that Thompson had discovered, over two hours before the search warrant was issued, that 122 West Wyneva Street was a multi-unit dwelling and thus a search warrant for the entire property would be overbroad. The District Court did not err when it found no good cause. Thompson's police report, which Kaplan received as part of pretrial discovery, stated Thompson encountered one person who told him he rented a room in the residence "[w]hile waiting for a search warrant to be signed" and then encountered other renters "[w]hile waiting on the search warrant." Moreover, the consent forms showed the renters signed them before the search warrant was issued. Kaplan contends the report was not clear about whether Thompson encountered the renters before the warrant was issued, and if it was, his counsel was ineffective for not raising the particularity issue before trial. We do not reach the ineffectiveness of counsel issue on direct appeal. *United States v. Thornton*, 327 F.3d 268, 271-72 (3d Cir. 2003) (denying an ineffective assistance of counsel claim without prejudice under *Massaro v. United States*, 538 U.S. 500, 504-05 (2003), which made clear "it is preferable that such claims be

11

considered on collateral review rather than on direct appeal").[6]

B.

When reviewing the sufficiency of the evidence, "[w]e apply a particularly deferential standard of review," sustaining the jury's verdict if, viewing "the evidence in the light most favorable to the government," "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (quotation marks omitted).

At trial, the government introduced a stipulation, with Mason's counsel's concurrence, of laboratory reports of a forensic scientist, Lisa Moore, stating the substance found in Mason's minivan was approximately three kilograms of cocaine. After Mason informed the court that he did not concur in the stipulation, the government called Moore to the stand. Moore was qualified as an expert witness without objection and testified to the findings set forth in her laboratory reports. Mason's attorney cross-

---

[6] Even if we were to reach the merits, we would affirm. There is no evidence that search-warrant affiants Skahill and Regan knew 122 West Wyneva Street was a multi-unit dwelling. *See United States v. Johnson*, 26 F.3d 669, 694 (7th Cir. 1994) ("'The general rule voiding the warrant for an undisclosed multiunit structure does not apply if the defendant was in control of the whole premises or they were occupied in common, if the entire premises were suspect, or if the multiunit character of the premises was not known to the officers.'") (quoting *United States v. Gilman*, 684 F.2d 616, 618 (9th Cir. 1982)) (citation and alteration omitted). Moreover, the search warrant was not allegedly overbroad as to Kaplan – areas under his control were properly within the scope of the warrant. *Stearn*, 597 F.3d at 551 ("To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure."). Thompson obtained signed consent forms from the renters he encountered before searching their rooms, so relied on the warrant only to search areas under Kaplan's control and common areas. Accordingly, he reasonably executed the warrant. *Maryland v. Garrison*, 480 U.S. 79, 86 (1987) ("If the officers had

examined her briefly, but not about the results of her tests.

Mason contends the tests Moore conducted were insufficient to establish the substance obtained from his minivan was approximately three kilograms of cocaine. As Mason's counsel stipulated to the results of Moore's tests and did not question her qualifications as an expert witness nor the results of her tests, a rational jury could find the substance was approximately three kilograms of cocaine. Mason contends his counsel was ineffective for not cross-examining Moore about the results of the tests she conducted. We do not address this claim on direct review. *Thornton*, 327 F.3d at 272.

C.

We review for abuse of discretion a denial of a motion for a new trial, *Honeywell, Inc. v. Am. Standards Testing Bureau, Inc.*, 851 F.2d 652, 655 (3d Cir. 1988), including when the motion is made on the basis of improper vouching. *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 282 (3d Cir. 1999). It is improper for an investigating officer to vouch, *Lam v. Kelchner*, 304 F.3d 256, 272 (3d Cir. 2002), defined as assuring the jury of the credibility of a government witness based on information outside the record. *United States v. Lee*, 612 F.3d 170, 195 (3d Cir. 2010). Vouching is non-constitutional error and is harmless "when it is highly probable that the error did not contribute to the judgment." *Dispoz-O-Plastics*, 172 F.3d at 286 (quotation marks omitted).

Kaplan contends Thompson, Skahill, and Regan prejudicially vouched for the investigation and their own and others' credibility. The District Court found the

---

known, or should have known, . . . of the error in the warrant, they would have been obligated to limit their search to" the apartment of the person named in the warrant).

13

testimony was not improper or not prejudicial, particularly in light of its sustaining

Kaplan's objections and giving curative jury instructions. The court did not err.

Thompson's response "[o]ther than our investigation?" was responsive to the question of

whether he had actual knowledge connecting Kaplan to certain evidence. Thompson's

testimony that he knew Kaplan lived at 122 West Wyneva Street was cumulative of other

indicia of residency and a cooperating witness's testimony. Skahill's testimony that a

cooperating witness had initially lied to the police that he had not obtained cocaine from

Kaplan was cumulative of the witness's testimony and other evidence.[7] Regan's

testimony that cocaine was purchased that investigators believed was coming from

Kaplan was cumulative of a cooperating witness's testimony he bought cocaine from

Kaplan. Any remaining prejudice was cured by the court's curative jury instructions. *See,*

*e.g.*, *United States v. Zehrbach*, 47 F.3d 1252, 1267 (3d Cir. 1995) (holding a court's

curative jury instructions rendered harmless a prosecutor's vouching).[8]

D.

1.

---

[7] Kaplan contends the court's post-objection jury instruction was erroneous. Skahill was asked whether the cooperating witness had said "he got the drugs from" someone other than Kaplan. Skahill responded: "Yes, he lied about it." The court instructed the jury to "disregard that comment about what was said." Kaplan contends the court should have instructed the jury to disregard only Skahill's comment "he lied about it," not Skahill's entire response. Kaplan did not object to the court's phrasing of the instruction at the time and has provided no basis for finding the possibility the jury disregarded the word "Yes" was reversible error, particularly as the cooperating witness testified he initially told the police the source of the cocaine was not Kaplan.
[8] Kaplan contends the final jury instruction was erroneous because it instructed the jury to disregard opinion testimony of Thompson, Skahill, and Regan "about who was truthful

A prior conviction can provide the basis for increased punishment only if the prosecutor "files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). Strict compliance with these filing and service requirements is required. *United States v. Rivas*, 493 F.3d 131, 141 (3d Cir. 2007). Mason contends the government failed to serve him or his counsel with a § 851 information. As he did not raise this objection before the trial court, we review for plain error. *United States v. Couch*, 291 F.3d 251, 252 (3d Cir. 2002).[9] "Service must be made in the manner provided for a civil action." Fed R. Crim. P. 49(b). In a civil action, service may be made "by electronic means if the person consented in writing – in which event service is complete upon transmission." Fed R. Civ. P. 5(b)(2)(E). "If a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E)." Fed R. Civ. P. 5(b)(3). In the Eastern District of Pennsylvania, "[e]lectronic service of the Notice of Electronic Case Filing constitutes service of the filed document to all . . . parties [entitled to service who have consented to electronic service] and shall be deemed to satisfy the requirements of . . . Rule 49 of the Federal Rules of Criminal Procedure." E.D. Pa. L.R. 5.1.2(8)(a). As a notice of electronic filing of the section 851 information,

---

and who was not," but not also about "who was guilty and who was not." As none of those witnesses improperly testified about guilt, the District Court did not err.

[9] In the sentencing hearing, Mason's counsel initially said "the Government needs to confirm that they gave us [section 851] notice." When the government said it had filed the notice, as indicated on the docket, and the court asked Mason's counsel "Are you saying you never got notice?" Mason's counsel responded: "[I]f that bears out on the docket, then I agree." The court then asked Mason's counsel why he had mentioned the issue, as "[y]ou know what the docket says." Mason's counsel apologized.

15

with Mason's trial counsel named as a notice recipient, is in the record, the government properly served Mason's trial counsel.

2.

"The question of what documents a district court may rely on to determine the nature of a prior conviction . . . [is a] question[] of law, which we review de novo." *United States v. Howard*, 599 F.3d 269, 271 (3d Cir. 2010) (citation omitted). A court may rely on a certified copy of a conviction to prove the conviction. *Id.* at 272. At the sentencing hearing, the government introduced a certified copy of a 1996 conviction of "Leonard Mason aka Leon Johnson" for conspiracy to distribute cocaine. Mason contends the government must introduce evidence beyond the certified copy of conviction proving the conviction was his. As there is no evidence questioning the identity of the person named on the conviction record, Mason is incorrect. *United States v. Gonzalez*, 625 F.3d 824, 827 (5th Cir. 2010).

III.

For the foregoing reasons, we will affirm the judgments of conviction and sentence.