IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | |
| | : | |
| v. | : | |
| | : | |
| FRANCISCO F. FELTON, V. | : | ID No. 1510017422 |
| JOHNIE McDONALD | : | ID No. 1510017373 |
| KEVIN A. McDONALD, Jr. | : | ID No. 1509002944 |
| TAQUEN G. OWENS | : | ID No. 1509002964 |
| JAMES M. SMITH | : | ID No. 1509006076 |
| ABDUL WHITE | : | ID No. 1509002951 |
| GARY D. WILLIAMS | : | ID No. 1509002954(A & B) |
| | : | |
| Defendants. | : | In and for Kent County |
| | : | |

*Submitted: May 19, 2016*
*Decided: June 22, 2016*

**<u>OPINION AND ORDER</u>**

*Upon Defendants' Motions to Suppress*
***DENIED***

Lindsay Taylor, Esquire, Department of Justice, Dover, Delaware, for the State.

Alexander Funk, Esquire, Dover, Delaware, for Defendant Francisco F. Felton, V.
Brian J. Chapman, Esquire, Dover, Delaware, for Defendant Johnie McDonald.
William J. Rhodunda, Jr., Esquire, Wilmington, Delaware, for Defendant Kevin A. McDonald, Jr.
Andre M. Beauregard, Esquire, Dover, Delaware for Defendant Taquen G. Owens.
Jonothan Layton, Esquire, Wilmington, Delaware for Defendant James M. Smith
Edward C. Gill, Esquire, Georgetown, Delaware and Alexander Funk, Esquire, Dover, Delaware, for Defendant Abdul White
J'Aime Walker, Esquire, Office of the Public Defender, Dover, Delaware for Gary D. Williams.

Clark, J.

# I. INTRODUCTION

The captioned Defendants ("Defendants") are a subset of a group of nineteen Defendants originally charged with Racketeering, Drug Dealing, Aggravated Possession, Conspiracy Second Degree, and other charges. These charges resulted in a multiple count indictment related to their alleged participation in a marijuana, cocaine, and heroin distribution ring, allegedly led by Kevin M. McDonald ("McDonald") and Frank R. Lovett ("Lovett"). The Defendants have moved to suppress all evidence recovered as the result of wiretaps that flow from, and cite to, a wire tap application affidavit and order, submitted on August 17, 2015, for the line (302) 382-7892 ("7892 Affidavit"). The Defendants' motions argue that the language in the affidavits contain stale, conclusory, and boilerplate language, as well as minimal facts, which are insufficient to support a finding of probable cause, and necessity as required by 11 *Del. C.* § 2407(a)(3).[1] The State opposes Defendants' motions, stating that probable cause and necessity are sufficiently established and the wiretap orders are valid. For the reasons below, this Court finds the State's position persuasive. Accordingly, Defendants' motions to suppress evidence derived from the respective wiretaps are **DENIED**.[2]

## II. FACTS AND PROCEDURAL BACKGROUND

The Delaware State Police ("DSP") initiated a wiretap investigation in August 2015 based upon a multi-year drug trafficking investigation into McDonald, Lovett,

---

[1] 11 *Del. C.* § 2407(a)(3) requires that an application for a wiretap contain "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed, why such procedures reasonably appear to be unlikely to succeed if tried, or why such procedures would be to dangerous if tried."

[2] Two parties have raised issues alleging the necessity of a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). These claims are not addressed in this consolidated opinion.

2

their associates, and the area of Unity Lane in Greenwood, Delaware ("Unity Lane"). The DSP had been conducting an active investigation into Lovett and McDonald's criminal drug trafficking organization (the "Organization") and the area of Unity Lane since 1992. Since this decision hinges solely on the four corners of the affidavits submitted, all factual background cited herein is contained in the various affidavits of probable cause in support of their respective wiretap applications.

The Organization is distinctly compartmentalized, allowing it to evade exposure and investigation by law enforcement. Throughout the years, McDonald and his associates, Lovett and Abdul T. White ("White"), have been arrested, convicted, and pled guilty to various crimes dealing with drugs and violence. These crimes include: possession of various drugs, assault, conspiracy, various firearm charges, resisting arrest, various other weapons charges, tampering with physical evidence, forgery, drug dealing, reckless endangerment, attempted murder, and robbery.

Furthermore, Unity Lane is a known open air drug market, nicknamed "the Hole," which is surrounded by trees and thick foliage, depending on the time of year, with only one ingress and egress. Unity Lane includes a small community of individuals who all know each other, and who know the respective vehicles driven by their fellow residents. Multiple community members, including members of the Organization, participate in its open air drug market. During the course of the investigation, the DSP utilized three confidential informants ("CIs"), physical surveillance, pole cameras, controlled buys, search warrants, arrests, suspect interviews, and pen registers. Each of these techniques yielded some success. However, the investigation's goals of identifying the source of the drugs, stash locations, and identifying additional members of the Organization were not met by these efforts.

In furtherance of an on-going investigation, on August 17, 2015, the Attorney General's Office of the State of Delaware ("the State") applied for and obtained an order authorizing the use of wiretaps on cellular telephone number (302) 382-7892 ("7892"), which was a prepaid Verizon account allegedly used by McDonald in conducting the Organization's business.

After acquiring evidence from this first wiretap of 7892, the State applied for and obtained five additional wiretap orders authorizing the use of wiretaps. The additional phone lines targeted by those wiretap applications were as follows: (513) 265-4266 ("4266"), a prepaid Verison account allegedly used primarily by Kevin A. McDonald Jr. ("K.A.McDonald") on August 21, 2015; (904) 495-8851 ("8851"), a prepaid Verizon account allegedly used primarily by Lovett on August 21, 2015[3]; (615) 571-4038 ("4038"), a prepaid Verizon account allegedly used primarily by K.A.McDonald on August 22, 2015; (302) 233-4375 ("4375"), a prepaid Verizon account originally allegedly used primarily by Lovett on August 26, 2015[4], but later discovered to belong to Gary D. Williams ("Williams") prompting a new application on September 3, 2015; and (954) 809-4794 ("4794"), a prepaid Verison account originally allegedly used primarily by Kevin Dukes("Dukes") on September 2, 2015. The police later discovered that the 4794 phone line belonged to Defendant James Smith ("Smith").

### The 7892 Application and Affidavit

The same Superior Court Judge issued all wiretap orders discussed in this

---

[3] In a later search warrant, the State asserted that after monitoring the communications of 8851, they discovered the phone line belonged to Defendant Owens. This will be discussed *infra*.

[4] The discovery that the phone line belonged to Williams prompted the State to file a new wiretap application and affidavit to be filed on September 3, 2015, with corrections and additional information added.

decision. The linchpin affidavit, incorporated into the subsequent applications and affidavits, was the one submitted for the 7892 wiretap ("7892 Affidavit"). That affidavit was a fifty-three page document containing detailed information regarding the affiants' backgrounds, the targeted defendants' backgrounds, a summary of each CI used in the investigation, a history of the investigation, details of the need for interception, and a segment on minimization. The affiants for the 7892 Affidavit were Detective Jason Vernon ("Affiant Vernon") and Sergeant Lance Skinner ("Affiant Skinner"). Both affiants represented familiarity with all aspects of the investigation by personal participation, and that they were both experienced in the investigation of drug crimes.

Affiant Vernon is a Delaware State Trooper who has been employed by the DSP since September 2007. He has been assigned to the Kent County Drug Unit since August 2012. Furthermore, Affiant Vernon received Drug Training instruction by the DSP, Drug Enforcement Administration, the Merit Group, the 420 Group, and the International Association of Undercover Officers. Affiant Vernon made numerous weapons and drug related arrests, and has authored numerous search warrants. Furthermore, he has assisted in the execution of numerous other search warrants by the DSP. Finally, Affiant Vernon previously assisted with six other wiretap investigations in surveillance and call monitoring capacities.

Affiant Skinner has been employed by the DSP since July 2001, and assigned to the Kent County Drug Unit since January 2012. From August 2003 until January 2007, Affiant Skinner was assigned to the Governor's Task Force. Furthermore, Affiant Skinner was an undercover detective for the DSP between January 2007 and March 2011. Affiant Skinner also attended State and Federal courses sponsored by the U.S. Department of Justice Drug Enforcement Administration, as well as other courses

relating to the identification, manufacturing, distribution, detection, and abuse of controlled substances. Furthermore, Affiant Skinner has been an affiant for more than one hundred search and seizure warrants, and has made numerous purchases of illegal drugs while working in an undercover capacity. Finally, Affiant Skinner has been a lead investigator and assisted with and supervised several wire-tap investigations throughout the State of Delaware.

The 7892 Affidavit also includes a section outlining the goals of the investigation, which is repeated in the subsequent affidavits. It also details the background for each of the targeted individuals. The subsequent affidavits include background for their own respective targeted individuals.

The next section of the 7892 Affidavit provides information on each of three CIs. The first CI ("CI-1") was identified as a past-proven, reliable CI who has provided information resulting in the recovery of illegal drugs and arrests of the individual(s) involved. CI-1 provided information regarding McDonald, who he knew as "Sprite." CI-1 positively identified McDonald with a DELJIS photograph. Furthermore, CI-1 conducted several controlled drug purchases from McDonald for the DSP. The first controlled purchase was conducted on July 25, 2011. The second controlled purchase with CI-1 was conducted on August 18, 2011. A third controlled purchase with CI-1 was conducted on September 20, 2011. A fourth controlled purchase with CI-1 was conducted on December 12, 2011.

The second CI ("CI-2") was also identified as a past-proven, reliable CI who has provided information resulting in the recovery of illegal drugs and arrests of the individual(s) involved. CI-2 gave affiants information regarding McDonald, or "Sprite," and how he was distributing large quantities of cocaine in Kent and Sussex Counties. CI-2 was also able to positively identify McDonald as "Sprite" from a

6

DELJIS photograph. Although CI-2 did not conduct controlled purchases for the DSP, CI-2 assisted an undercover officer ("Delaney") in conducting controlled drug purchases. Namely, CI-2 introduced Delaney to McDonald during the last two weeks of April of 2015, in which two separate controlled purchases were executed between Delaney and McDonald. During the last two weeks of July, a third controlled purchase was executed, with the assistance of CI-2. Finally, on August 12, 2015, Affiant Skinner contacted CI-2 who provided information regarding a murder that took place on August 8, 2015. CI-2 believed that McDonald had something to do with the murder because CI-2 had been speaking with one of the victims that had been in the residence at the time of the homicide. The individual that CI-2 was speaking with was not willing to contact the police. Furthermore, CI-2 stated that the shooting was "Sprite's MO" and rumors linked him to the murder.

During the last two weeks of June 2015, a third CI ("CI-3") provided information to a detective regarding an individual known as "Bricks", who was believed to be Defendant Abdul White. CI-3 stated that "Bricks" was in possession of roughly seven to eight ounces of cocaine. At this point, the 7892 Affidavit notes that CI-3's relayed information matched the fact that Defendant White was charged for attempted murder in a home invasion and robbery case, but the charges were dismissed due to a lack of victim cooperation. CI-3 also informed the detective that "Sprite," or McDonald, was one of the largest scale drug dealers in the area. CI-3 further stated that all of the shootings and robberies around the area involved "Sprite's people" from Philadelphia, but that he did not know their identifies. Defendant White had Philadelphia ties, including many arrests in Philadelphia. Finally, CI-3 informed the detective that "Bricks" was "Sprite's" cousin and was participating in the shootings and robberies, and it was possible that "Little Sprite," Defendant Kevin A. McDonald, who is

7

McDonald's son, was also involved.

The following section in the 7892 Affidavit discusses the investigation to date, which has already been summarized *supra*. The physical surveillance portion of the Affidavit discusses Unity Lane, which has been described *supra*, and details the various unsuccessful attempts of surveillance of Unity Lane during the investigation. The affidavit further notes that aerial surveillance was not employed due to the large trees and thick foliage that surround Unity Lane, limiting the ability to observe anything from the air. Furthermore, because there was only one ingress and egress at Unity Lane, and members of the community knew each other and were believed to notice anything that did not belong, the DSP could not effectively deploy law enforcement personnel, even in unmarked vehicles or in plain clothes because it would draw additional scrutiny and alert the targets of the investigation. The 7892 Affidavit details that drive by surveillance was conducted, as well as the deployment of sniper/observers into the woods surrounding the area. Although this form of surveillance provided some insight into the area and the organization, on two separate occasions, the surveillance operation had to be terminated when the surveillance team was noticed by individuals from Unity Lane. Physical surveillance was also conducted on McDonald's residence at 92 Apple Run in the Paris Villa development in Magnolia, Delaware as well. At the time of the 7892 Affidavit, this surveillance had not produced evidence of any drug related activity.

Other forms of investigation described in the 7892 Affidavit are search warrants, the potential use of attorney general subpoenas, confidential informants (discussed *supra*), undercover law enforcement activity (discussed *supra*), interview of suspects, arrest of suspects, examination of discarded trash, use of pole cameras, use of GPS tracking device, and controlled purchases (discussed *supra*). These sections explain why those forms of investigation either were not used, or were used but did not meet

the objectives of the investigation. The issuing Judge approved the wire tap application for 7982 on August 17, 2015.

**The 4266 Application and Affidavit**

Through intercepting the phone line of 7892 ("7892 Phone Line"), the investigation led to various other phone lines that were connected to the illegal drug trafficking organization. On August 17, 2015, the 7892 phone line placed a call to (513) 265-4266 ("4266 Phone Line"). One caller asked another for a social security number for paperwork purposes. Law enforcement checked the social security number through DELJIS and discovered that it belonged to Defendant Kevin A. McDonald ("K.A.McDonald"). From that point forward, the wiretap intercepted various calls to and from the 4266 Phone Line, recording conversations between McDonald and K.A.McDonald. These calls referenced various slang vernacular such as "jawns," "green ones," "reggies," "O," and "female pucks." Detective Vernon, one of the affiants of the 7892 affidavit, explained that these terms were coded slang words referencing illegal drugs. Affiant Vernon explained that the conversation regarding "jawns" and "green ones" referred to a previous interception the day before where McDonald obtained a quantity of marijuana. Furthermore, the conversation included references to what the "ticket is on it" and a response stating "twelve-five." Affiant Vernon explained that reference to the "ticket" is a common street term to request the price of drugs, and the price given of "twelve-five" translates to $1,250. It was also determined, through these conversations, that K.A.McDonald had a room at the McDonald residence.

With these intercepted conversations, Affiant Vernon applied for a wiretap order on the 4266 Phone Line and authored the affidavit ("4266 Affidavit"). This affidavit incorporates the above-mentioned intercepted calls including the alleged drug

vernacular.  The 4266 Affidavit included much of the same information regarding the investigation and need for interception as the 7892 Affidavit, discussed *supra,* which was incorporated by reference in the 4266 Affidavit.  However, the 4266 Affidavit includes additional and updated information as well. Backgrounds given regarding Defendants in the 4266 Affidavit include only Defendants being targeted in that specific application, and not the same list of Defendants as the 7892 Affidavit. The portion of the affidavit detailing CI Profiles varies as to the third CI profile, adding information regarding the third CIs statement on "Bricks" and how "Little Sprite" is possibly involved.[5]   Various other portions of the 4266 Affidavit contain information that was not included in the 7892 Affidavit, including that there were no CIs who could perform controlled purchases from or provide information on K.A.McDonald.  Furthermore, the 4266 Affidavit states that K.A.  McDonald does not have a vehicle registered in his name, nor do law enforcement know of any vehicle that he operates. The 4266 Affidavit and application for a wiretap order was submitted, granted, and authorized on August 21, 2015.

## The 8851 Application and Affidavit

The third wiretap application and affidavit, for phone line (904) 495-8851 ("8851 Phone Line"), was also submitted, granted and authorized on August 21, 2015. This application  targeted Lovett as being the primary user of the phone line. The Affidavit ("8851 Affidavit") was also authored by Affiant Vernon and  included much of the same investigation and need for interception information discussed *supra*, with some additional and updated information as well. As all other affidavits supporting the various applications, the 8851 Affidavit incorporated the  7892 Affidavit by reference.

---

[5] Discussed *supra* when detailing the various CIs and their roles in the investigation.

Throughout the investigation, law enforcement discovered that Lovett was a large scale cocaine distributor and the source of supply of cocaine for McDonald, which was then confirmed by the interception of communications on the 7892 Phone Line. During undercover controlled purchases, McDonald would meet CI-2 and Delaney at a designated meet location. McDonald was then followed to Unity Lane and back to the designated meet location where the transaction would then occur. McDonald would then return to Unity Lane where he would meet with Lovett.

DSP intercepted various conversations between McDonald and Lovett on the 7892 phone line. These conversations included references to "food" and "dog food" and McDonald's "usual." Affiant Vernon described the term "dog food" to be typically used to identify heroin. Furthermore, "my usual," in reference to McDonald, suggests cocaine based upon previous transactions with CI-2, Delaney, and McDonald's history. Furthermore, McDonald received various calls on the 7892 Phone Line regarding requests for orders. During an arranged controlled purchase, CI-2 placed a call to the 7892 Phone Line to McDonald and requested the same thing that he or she had previously received. McDonald advised that he would contact the same supplier and let CI-2 know. Immediately thereafter, McDonald placed a call to the 8851 Phone line to check the status of the shipment. The male on the 8851 line was suspected to be Lovett at the time of these intercepts. Following these intercepts, Affiant Vernon authored the 8851 Affidavit to further the investigation. After the wiretap application was granted and authorized, through monitoring the communications on 8851, law enforcement discovered that the 8851 Phone Line belonged to Taquen Owens ("Owens"), and not Lovett.[6]

---

[6] This application originally targeted Lovett as primarily using the phone line, and listed Lovett as well as McDonald as the primary targets. However, it was later discovered that the phone line

11

**The 4038 Application and Affidavit**

The fourth wiretap application and affidavit for phone line (615) 571-4038 ("4038 Phone Line") was submitted, granted and authorized on August 22, 2015. The primary target of this application is K.A.McDonald. This application and affidavit ("4038 Affidavit") incorporates the 7892 and 4266 Affidavits by reference, is also authored by Affiant Vernon and includes much of the same investigation and need for interception information discussed *supra*, with some additional and updated information.

Additional and updated information includes the same type of variations as previously discussed for the 4266 Affidavit. The 4266 Affidavit described the intercepts of 7892 and 4266 Phone Lines, which provided communications between K.A.McDonald and an unknown male. These conversations were regarding firearms and a man by the name of "lil man" Hickman who was selling prescription drugs in Sussex County, and had a lot of "bread," which Affiant Vernon described as meaning money. The conversations included a plan to kidnap and interrogate Hickman to discover where his money was located,. Furthermore, McDonald received a call from the 4038 Phone Line, in which his female companion, Amanda Pollard ("Pollard"), answered. The male on the 4038 Phone Line requested to speak to his father, McDonald, and the voice was positively identified as belonging to K.A.McDonald. Following these intercepts, Affiant Vernon authored the 4038 Affidavit to further the investigation.

**The 4375 Applications and Affidavits**

A fifth wiretap application and affidavit for phone line (302) 233-4375 ("4375

---

belonged to Defendant Owens and not Lovett.

Phone Line") was submitted, granted and authorized on August 26, 2015. The primary target on this application is Lovett. This application and affidavit ("4375 Affidavit") incorporates the 7892 and 8851 Affidavits by reference, is also authored by Affiant Vernon and includes much of the same investigation and need for interception information discussed *supra*, with some additional and updated information. The additional and updated information includes communications that were intercepted from authorized wiretaps included conversations regarding a "bun" and "forty of hand," which Affiant Vernon described to mean crack cocaine costing forty dollars a piece. Lovett received various calls and texts on the 8851 Phone Line regarding: "smoke," which Affiant Vernon described to mean marijuana; "The Hole," which was described as the nick name for Unity Lane; the "Lake," described to be the Silver Lake Apartments in Milford where Lovett had been previously observed selling narcotics; "logs," which Affiant Vernon described to mean ten bundles of heroin; among other similar conversations. In a conversation between Lovett and McDonald, Lovett told McDonald to contact (302) 233-4375 in order to get in contact with him. Affiant Vernon stated in the 4375 Affidavit that this number was believed to be Lovett's secondary contact number for high scale clientele and suppliers. Following these intercepts, Affiant Vernon authored the 4375 Affidavit to further the investigation.

However, after monitoring the 4375 Phone Line, law enforcement discovered that the number belonged to Defendant Gary Williams ("Williams") and not Lovett, but was used by both to facilitate their drug distribution. Due to this discovery, on September 3, 2015, Affiant Vernon submitted another wiretap application and affidavit ("4375 Updated Affidavit") for the 4375 Phone Line with corrected information and added additional information gathered from the interception of the line. The outgoing call record showed multiple calls to (302) 284-2062 and (302) 396-1130. Eventually

13

a female answered and an argument ensued between the female of 2062/1130 and male of 4375. During this argument, the female referred to the male as "Gary." A DELJIS inquiry into the 2062 number provided that the number belonged to a Lindy Cadwallader, and there were numerous reported domestic incidents reported involving Ms. Cadwallader and Williams. Furthermore, the wiretap of 4375 intercepted various conversations between Williams and K.A.McDonald regarding various firearms. Other conversations intercepted included whether Williams had "bud," described to be marijuana, and "half a ball," described to be a quantity of cocaine, and also if Williams had a "girl," which he did not. The 4375 Updated Affidavit also includes information regarding communications that are pertinent to and detailed the sixth wiretap application, which will be discussed *infra*. Through the interceptions of the 4375 Phone Line, law enforcement discovered that Williams might be a potential source of supply of cocaine for McDonald as well, and applied the updated application and affidavit to further the investigation.

Updates regarding the necessity showing are also included. Namely, the original 4375 application focused on the necessity for the wiretap believing the line to belong solely to Lovett. The 4375 updated Affidavit notes: (1) attempts at physical surveillance of Gary Williams and its limits; (2) that no undercover officer or CIs were currently available to perform undercover or controlled purchases from Gary Williams; and (3) also other investigative limitations relating to Gary Williams

### The 4794 Application and Affidavit

A sixth wiretap application and affidavit for phone line (954) 809-4794 ("4794 Phone Line") was submitted, granted and authorized on September 2, 2015. The primary target on this application is Dukes. This application and affidavit ("4794 Affidavit") incorporates the 7892, 8851, 4038, and 4375 Affidavits by reference, is also

14

authored by Affiant Vernon and includes much of the same investigation and need for interception information discussed *supra*, with some additional and updated information. The additional and updated information includes similar variations as discussed *supra*. Through the intercepts of communications on the authorized phone lines, conversations were captured between K.A.McDonald and an unknown male at the 4794 Phone Line regarding "what is in stock" and whether he could get an unknown quantity for "eighteen-two racks." Affiant Vernon, based on his experience in the field, opined that the conversation was regarding high grade marijuana, and that a rack meant a thousand dollars, and "eighteen-two" amounted to $18,200. Conversations between a female and K.A.McDonald were also captured, regarding something that was to be left at the door of the female's residence. Furthermore, law enforcement monitored additional conversations between K.A.McDonald and the unknown male at the 4794 Phone Line regarding if "she" was shaky this time, and that the male's portion was "pretty." Affiant Vernon advised, based on his experience, that this conversation was regarding powder cocaine and crack cocaine. The 4794 Affidavit referenced information from the 4375 Affidavit regarding conversations between an individual believed to be Williams and K.A.McDonald regarding firearms that the individual obtained.

Furthermore, through the intercepted communications available at the time of the 4794 Affidavit, law enforcement were able to observe a potential transaction which occurred between K.A.McDonald and the unknown male of the 4794 Phone Line who was driving a Silver Mercedes. This transaction occurred at Nascar Lane, where the individual on the 4794 Phone Line stated that he was parked behind K.A.McDonald. Officers observed a Silver Mercedes where the individual stated he was parked. A second potential transaction occurred between K.A.McDonald and the unknown

15

individual at Woodland Mobile Home Manor. Intercepted communications between the 4794 Phone Line and K.A.McDonald revealed that the unknown individual was about to leave Nascar Lane to meet K.A.McDonald. At the time this communication was intercepted, officers observed a blue Oldsmobile Intrigue departing Nascar Lane. Law enforcement followed the blue Oldsmobile to Woodland Mobile Home Manor, in which they were unable to observe the meeting and potential transaction between K.A.McDonald and the 4794 individual. However, law enforcement knew that K.A.McDonald was in the same area as the blue Oldsmobile Intrigue due to GPS tracking that was installed on K.A.McDonald's vehicle. The registration of the Oldsmobile belonged to Dukes, and the detective observing the activity positively identified the male as Dukes. This detective further stated that the individual in the Oldsmobile, identified as Dukes, was the same individual operating the previously observed Mercedes. Based on this information, Affiant Vernon authored the 4794 Affidavit and wiretap application to further the investigation.

On September 8, 2015, Affiants Skinner and Vernon submitted a search warrant application and affidavit to search a residence at 1361 Layton Corners Road, Harrington, Delaware. The search warrant also sought to search the vehicles located at the property. Furthermore, the search warrant sought to search Defendant Smith, a Silver 1999 Mercedes E320 Station Wagon, and another residence at 1 New Street Harrington, Delaware. In the affidavit for this search warrant application, the affiants stated that investigators originally believed the 4794 Phone Line was primarily used by Dukes, however, since interception began, surveillance units have been able to positively identify the user of the 4794 Phone Line as Smith. There is no indication of an additional or updated wiretap application or affidavit addressing the 4794 Phone Line and the identity of the user being Smith.

16

## Current Stage of the Proceedings

In February 2016, the captioned Defendants moved for orders to suppress evidence related to all wire interceptions in which they were involved, alleging failure to establish probable cause and necessity. The Court held oral argument on the motions on April 13, 2016 and April 15, 2016. During argument on April 13, 2016, Defendant Williams also moved to sever charges as well as relief from prejudicial joinder in a joint trial. Both were granted by the Court. Following the arguments, the Defendants were allotted additional time to provide this Court with supplemental briefing regarding issues raised during the hearings. Defendants submitted supplemental briefings on May 2, 2016 and the State submitted responses to each Defendant on May 19, 2016. Because these motions present common questions of fact and law, the Court will address them in this consolidated opinion.

The Court will discuss the extent of the standing for each Defendant to challenge the separate warrants. Furthermore, each separate warrant application and affidavit will be examined and discussed since the Court finds that at least one Defendant has standing to challenge the sufficiency of each warrant.

The memoranda present numerous claims in support of the motions. The first general claim is that the affiants relied on minimal or irrelevant information that did not amount to probable cause. The second claim is that law enforcement relied on stale, conclusory, and boilerplate language, failing to satisfy the necessity requirement of 11 *Del. C.* § 2407(a)(3). The third claim is that the wiretap order unlawfully authorized law enforcement to intercept communications outside the State's territorial jurisdiction permitted under 11 *Del. C.* § 2407(c)(3).

## III. DISCUSSION

### A. Defendants' standing to challenge the wiretap orders

#### 1. Standard for determining standing.

The first issue before the Court is whether the Defendants have standing to challenge the respective wiretap orders in the Defendants' motions. Within a motion to suppress, the burden is on the Defendant to set forth his or her standing and state the grounds "upon which [the motion is] made with sufficient specificity to give the state reasonable notice of the issues and to enable the court to determine what proceedings are appropriate to address them."[7]  In regards to evidence derived from wiretaps authorized by Delaware statute, standing can be achieved in one of two ways: constitutionally by the Fourth and Fourteenth Amendment of the United States Constitution; or statutorily as an "aggrieved person," pursuant to 11 Del. C. § 2401(1).

#### a. Fourth and Fourteenth Amendments

"In Delaware, an individual's right to be free from unlawful searches and seizures is secured by the Fourth Amendment of the United States Constitution[,] which guarantees that individuals will be 'secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"[8]  Additionally, Delaware's Constitution guarantees individuals' rights to be "secure in their persons, houses, papers and possessions, from unreasonable searches and seizures."[9]  Because these rights are protected by both, Federal and State Constitution, a defendant "would be entitled to the

---

[7] Del. Super. Ct. Crim. R. 41.

[8] *State v. Porter*, 2004 WL 2419166, at *2 (Del. Super. Ct. Sept. 29, 2004) (citing U.S. Const. Amend. IV).

[9] *Id*. (citing Del. Const. art I, § 6).

suppression of . . . evidence originating in electronic surveillance violative of his own Fourth Amendment right to be free of unreasonable searches and seizures. Such violation would occur if [the State] unlawfully overheard conversations of a [defendant] himself or conversations occurring on his premises, whether or not he was present or participated in those conversations."[10]

The Defendant bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in what was searched.[11] In order to establish standing to challenge the constitutionality of a search or seizure under the Fourth Amendment of the United States Constitution, Defendants must first show a personal privacy interest in the subject of the search or seizure.[12]

**b. Standing as an aggrieved person pursuant to 11 Del. C. §2401**

Delaware's statute on Wiretapping, Electronic Surveillance and Interception of Communications[13] provides that any aggrieved person may move to suppress the contents of an unlawfully-intercepted communication.[14] The specific language of 11 *Del. C.* § 2407(i)(1) provides that:

> (1)  Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of this State or a political subdivision thereof may move to suppress the contents of any intercepted wire, oral or electronic communication or evidence derived therefrom on the grounds that:
>
>    a.  The communication was unlawfully intercepted;

---

[10] *Alderman v. United States*, 394 U.S. 165, 176 (1969).

[11] *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

[12] *Id.*

[13] 11 *Del. C.* § 2401 *et al*.

[14] 11 *Del. C.* § 2407(i)(1).

b. The order of authorization under which it was intercepted is insufficient under this chapter; or

c. The interception was not made in conformity with the order of authorization granted under this chapter.[15]

Under Delaware law, an "aggrieved person" is defined as "a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed."[16] The Delaware statute is very similar to the federal statute on electronic surveillance, which provides that "Under Title III, an "aggrieved person" has standing to move to suppress the contents of an unlawfully-intercepted communication."[17] Furthermore, under federal law, "aggrieved person" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed ."[18]

Due to the limited law in Delaware addressing the scope of what is an "aggrieved person," and the Delaware statute's similarity to the federal law, the Court will look to federal law. Under federal law, "[a]n aggrieved person is one who was a party to, overheard on, or recorded by an objectionable wiretap, or a person against whom the wiretap was directed (e.g., named in the warrant)"[19] Accordingly, in order to have standing to challenge the wiretap interceptions under the electronic surveillance statute, a Defendant may show that he is an "aggrieved person" as described herein.

## 2. Defendants' respective standing to challenge the various wiretaps

### James M. Smith

---

[15] 11 *Del. C.* § 2407(i)(1).

[16] 11 *Del. C.* § 2401(1).

[17] 18 U.S.C. § 2518(10).

[18] *U.S. v. Salazar-Rojas*, 2015 WL 687348, at *3 (W.D. Wash. Feb. 18, 2015).

[19] *U.S. v. Vasconcellos*, 658 F. Supp. 2d 366, 382 (N.D.N.Y. 2009).

Defendant Smith challenges the 7892, 4038, 4375, and 4794 Affidavits in support of the respective wiretap applications. The State argues that Defendant has standing only for intercepts in which his voice has been captured or affidavits that target him. The Defendant argues that he has a Fourth Amendment, and a statutory, right to challenge the affidavit which targets the 4794 Phone Line, as well as the other affidavits incorporated therein. Although Defendant Smith was not the target of an investigation or affidavit, Defendant argues that he is an "aggrieved person" for each of the wiretaps, as defined by 11 *Del. C.* § 2401(1). Defendant further argues that the State asserted Defendant Smith was the owner of the 4794 Phone Line instead of Dukes, in a subsequent search warrant. Therefore, Defendant Smith became a target of the wiretap application, even though he was not named. However, the State did not have any information regarding his existence when the affidavit was made. Defendant argues that the affidavit targets "others yet unknown," which, in the context of this case, included Defendant Smith. Namely Smith, argues that since "others yet unknown" were targeted in the affidavits, and Defendant Smith later became a known target, he is a person against whom the interception was directed, and therefore is an "aggrieved person."

The State does not deny that Defendant Smith has standing to challenge the lines on which he was intercepted. The State proffers that Defendant Smith was intercepted on the 4038, 4375, and 4794 Phone Lines, and therefore, may justly challenge those affidavits. However, the State argues the Defendant Smith does not have standing to challenge any other affidavit for any other wiretap. Defendant Smith, as others, argues that he has standing to challenge all wiretaps by virtue of their incorporation into the affidavit and application of the phone lines in which Defendant himself was intercepted. Defendant asserts that if a previous affidavit can contribute to probable cause and

21

necessity for a subsequent affidavit, contributing to the authorization of a subsequent wiretap, then an aggrieved individual must be able to challenge all aspects of the subsequent application. This includes the previous affidavit incorporated by reference therein.

Black's Law Dictionary's definition is helpful in this regard. In relevant part, it provides the following:

> **incorporation by reference 1.** A method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one.[20]

Other Courts have examined the issue of incorporation of documents in affidavits supporting probable cause. Namely, in *People v. Tambe*, the Court of Appeals of New York has held that "material previously submitted to a Judge" may be incorporated by reference in a subsequent warrant application to him so long as the earlier information was given under oath, is either available to the Magistrate [or Judge] or sufficiently fresh in the Magistrate's memory so that he or she can accurately assess it and it is available in a form which can be reviewed at a later date."[21]

In *Tambe*, law enforcement obtained an eavesdropping warrant, which contained over 200 pages.[22] Included in the 200 pages was an affidavit by the investigating officer.[23] At a later date, the same investigating officer made an oral application by phone to the same Judge, to search the residence of one of the defendant's associates in the drug distribution being investigated.[24] In this oral application, the officer

---

[20] INCORPORATION BY REFERENCE, Black's Law Dictionary (10th ed. 2014).
[21] *People v. Tambe*, 71 N.Y.2d 492, 502 (1988).
[22] *Id.* at 498.
[23] *Id.*
[24] *Id.*

requested that the Judge "incorporate by reference all of the facts and circumstances contained in the 200 page application for the eavesdropping warrant issued 15 days earlier and he explained why he thought there was probable cause" for the search.[25] The Judge in *Tambe* "authorized a no-knock warrant based upon all the information presented, including the information supplied to support the eavesdropping warrant incorporated by reference into the search warrant application."[26] While Delaware's warrant process in the case at hand has obvious differences, the same principle regarding incorporation apply.

Likewise, in *United States v. Tortorello*, the Second Circuit examined the New York District Attorney's application for an order permitting law enforcement to tap two telephones.[27] The application was supported by an affidavit, which incorporated, by reference, previous orders and supporting affidavits pertaining to the same investigation, "for a more particular description of the offenses and conversations to be intercepted."[28] The Court there found that " the affidavits which were incorporated by reference in the orders clearly indicated the specific crimes to be investigated," which was enough to satisfy amendment and renewal requirements under New York Law.[29]

The State, understandably focuses on the strict definition of "aggrieved person", and the expectation of privacy issue. The State emphasizes that in the case of some of the defendants in this case, a defendant who was not known to be involved in the conspiracy at the time of the first wiretap and whose conversations were not intercepted in the earlier wiretap, could not have standing to go back in time and challenge the prior

---

[25] *Id.* at 498-99.

[26] *Id.* at 499.

[27] *U.S. v. Tortorello*, 480 F.2d 764, 771 (2d Cir. 1973).

[28] *Id.* at 782.

[29] *Id.* at 783.

23

warrant. The Court does not accept that argument, however. It would be inconsistent to not permit a defendant to challenge the probable cause allegations in a prior affidavit that is relied upon by the State, through incorporation of that document, to convince a judge or magistrate that there is probable cause for the warrant. As discussed in the *Tambe* and *Tortorello* cases, the State has the right to rely upon that prior incorporated affidavit for purposes of establishing probable cause and necessity. It would be inconsistent to allow the State to benefit from prior affidavits in support of a search and seizure while prohibiting an affected Defendant from challenging their sufficiency. The application and affidavits in these various warrants become intertwined upon incorporation. The orders authorizing the wiretaps do as well, giving an expanded degree of standing.

Here, the affidavits in support of wiretap applications of 4038, 4375, and 4794 all incorporate, by reference, the 7892 Affidavit. The 4794 Affidavit also incorporates the 8851, 4038, and 4375 Affidavits by reference. Each of those prior wiretap applications and affidavits were presented to the same Judge issuing the orders. Each affidavit was available for the Judge to review, and they were close enough in time for the information to be remembered. Furthermore, each application and corresponding affidavit was in writing, with each affidavit beings sworn to under oath. The Judge's decision to issue the subsequent warrants could fairly rely in part upon the previous incorporated affidavits.

Accordingly, by incorporating the previous affidavits, they become part of the new affidavit. If a Defendant has standing to challenge the newer warrant, then the Defendant should be able to challenge the earlier warrant, that had as an integral part, the prior affidavit providing the basis for that warrant. This Court finds that Defendant Smith has standing to challenge all warrants based upon affidavits incorporated into the

4794 Affidavit. Specifically, the Court finds that Defendant Smith has standing to challenge the 7892, 4038, 4375, and 4794 Affidavits.

## Kevin A. McDonald

Defendant K.A.McDonald challenges the (513) 265-4266 Affidavit in support of the respective wiretap application. This affidavit directly targeted K.A.McDonald. Therefore, he has standing to challenge the 4266 Affidavit as an aggrieved individual, as well as having a privacy interest in that which was searched. The 4266 Affidavit also incorporates the 7892 also Affidavit by reference. For these reasons, the Court finds that Defendant K.A.McDonald has standing to challenge the 4266 Affidavit and any warrant based upon an affidavit incorporated by reference in the 4266 affidavit.

## Abdul T. White

Defendant White challenges the 7892, 4266, and 4038 Affidavits in support of their respective wiretap applications. The State alleges that Defendant White made incriminating statements during communications that were intercepted and recorded on the 4266 and 4038 Phone Lines. The affidavits for the 4266 and 4038 Affidavits incorporate the 7892 Affidavit by reference. Because Defendant White's communications were intercepted and recorded on the 4266 and 4038 Phone Lines, he has a personal privacy interest right to challenge those wiretaps under the Fourth Amendment. Furthermore, Defendant White satisfies the statutory definition of an aggrieved person. The 7892 Affidavit is incorporated by reference in the 4266 and 4038 Affidavits, and therefore is subject to the same analysis regarding incorporation by reference, discussed above. Accordingly, the Court finds that Defendant White has standing to challenge the 7892, 4266 and 4038 Affidavits.

## Francisco F. Felton, IV

Defendant Felton challenges the 7892, 4266, and 4038 Affidavits in support of

the respective wiretap applications. The State responds that he only has standing to challenge 4038, and only regarding some of the calls therein because his voice was intercepted on some of the conversations on that line. Here, for the aforementioned reasons, since the 4038 affidavit incorporates both the 7892 and 4266 affidavits, Felton has standing to challenge all three. Accordingly, the Court finds that Defendant Felton has standing to challenge the 7892, 4266 and 4038 Affidavits.

### Taquen Owens

Defendant Owens challenges the 7892, 4038, 4375, 4794, and 8851 Affidavits in support of the respective wiretap applications. Regarding 8851, Defendant Owens has standing to challenge the affidavit, since his communications were intercepted and recorded on the 8851 Phone Line, and since the phone line belonged to Defendant Owens and not Lovett. Accordingly, Owens has a personal privacy interest in the wiretap authorized for the 8851 Phone Line, as well and an aggrieved person status. Furthermore, per the reasoning discussed *supra*, Defendant Owens may challenge the 7892 Affidavit incorporated by reference within the 8851 Affidavit.

However, as to the 4038, 4375, and 4794 Affidavits, both constitutionally and pursuant to court rule, the Defendant bears the burden of showing a personal privacy interest, or that he is a person aggrieved as defined by statute. [30] Here, Defendant has not provided or even proffered evidence of a violation of his personal privacy interest in those lines, or that he is a person aggrieved with regards to the 4038, 4375, and 4794 orders. Defendant accordingly has not met his burden regarding standing for the 4038, 4375, and 4794 warrants and therefore does not have standing to challenge them. Defendant Owens has standing to challenge only the 7892 and 8851 wire taps.

---

[30] Super. Ct. Crim. R. 41(f).

### Gary D. Williams

Defendant Williams challenges the sufficiency of the 4375 Affidavit in support of the respective wiretap application. Defendant Williams' communications has been allegedly intercepted and recorded on the 4375 Phone Line, and then subsequently targeted in the updated wiretap application and affidavit for 4375. Accordingly, Williams has standing to challenge both 4375 Affidavits, as well as the 7892 Affidavit incorporated therein.

### Johnie McDonald

Defendant Johnie McDonald ("J. McDonald") moved to join the motions to suppress submitted by Defendants McDonald, K.A.McDonald, and Smith. Defendant J. McDonald did not provide his own motion to suppress nor did he state which affidavit(s) and application(s) he is challenging. Since Defendant J. McDonald moved to join other motions, it can only be assumed that J. McDonald is challenging the sufficiency of affidavits challenged in the other motions.

Neither the affidavits challenged, nor the various motions to suppress included any information regarding Defendant J. McDonald. None of the affidavits named Defendant J. McDonald as a target nor was there any allegations for any warrant, and corresponding affidavit, that J. McDonald's communications were intercepted and recorded. The burden of proving standing to suppress evidence, with sufficient specificity to provide reasonable notice as to the issues, is on the Defendant.[31] Because Defendant did not provide sufficient specificity when alleging that suppression is warranted or adequately support his standing, the Court finds that Defendant J. McDonald does not have standing to challenging any of the wire taps.

---

[31] *Id.*

27

**Conclusion as to Standing**

Finally, because at least one defendant has standing to challenge each of the wiretaps, the Court will consider each challenged affidavit for (1) probable cause and (2) whether they contain a complete statement of necessity. As each affidavit must rise or fall on its four corners, each warrant will be examined separately.

**B. The Court finds that a showing of probable cause and necessity are established in each of the wire tap applications and affidavits.**

The Defendants' contentions that the affidavits do not establish probable cause and contained boilerplate language, or that the limitations suggested by the affiants are limitations inherent to a particular technique, are not availing. As Defendants emphasize, the affidavits do contain generic and repeated language. However, each of them includes specific facts related to the targets in each individual affidavit, and why each discussed technique would not accomplish their investigatory goals. When considered in their entirety, the affidavits separately and specifically refer to limitations encountered in the investigation of the Organization. With these limitations, and the supporting factual allegations, each affidavit supplies sufficient information and evidence to support a showing of probable cause and necessity.

    1. **Standards and the law**

        a. **Motion to Suppress**

In a Motion to Suppress challenging the validity of a search warrant, the defendant bears the burden of proving that the challenged search or seizure was unlawful.[32] The burden on a motion to suppress is by a preponderance of the

---

[32] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).

evidence.[33] The issuing Judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed."[34] Those same basic principles apply to the review of warrants authorizing wiretaps. A Judge's "determination of probable cause should be paid great deference by reviewing courts.[35]

### b. Probable cause and necessity

An order authorizing the interception of wire, oral, or electric communications may be granted upon a determination that: 1) there is probable cause to believe that a person has committed, is committing, or is about to commit an enumerated crime; 2) there is probable cause to believe that communications concerning the enumerated offense will be obtained through the wire intercept; 3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if attempted or would be too dangerous; and 4) there is probable cause to believe that the telephone number from which communications are being intercepted are being used in the commission of an enumerated offense or are used by an individual engaged in criminal activity.[36]

Probable cause exists "when the officer possesses information which would

---

[33] *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July 3, 2007).

[34] *Illinois v. Gates*, 462 U.S. 213 (1983) (citations omitted).

[35] *Id.* at 236 (1983).

[36] 11 *Del. C.* § 2407.

warrant a reasonable man in believing that a crime has been committed."[37] The finding of probable cause does not require proof beyond a reasonable doubt, or even that the defendant's guilt is more likely than not. "Probable cause is established if the totality of the circumstances contained in the affidavit indicates a probability of criminal activity and that evidence of the criminal activity could be obtained through the use of electronic surveillance."[38]

Older information relied upon in an affidavit in support of an application for a wiretap authorization is not stale solely by virtue of its age.[39] Older information may provide context and insight into a long term investigation and shows the judge that a wiretap is not the initial step in a criminal investigation.[40] Although probable cause to issue a wiretap order must exist at the time the order is sought, its existence is "determined on an *ad hoc* basis and depends upon the nature of the criminal activity alleged."[41] Furthermore, "the validity of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and the issuing of the affidavit."[42] An affidavit of probable cause will be considered in a flexible and practical manner, and will be considered as a whole rather than on the basis of its separate components.[43] An issuing judge's finding of probable cause "will not be invalidated by a hyper-technical, rather than a common sense, interpretation of

---

[37] *State v. Betts*, 2015 WL 2066602, at *1 (Del. Super. Apr. 1, 2015).

[38] *U.S. v. Ambrosio*, 898 F. Supp. 177, 181 (S.D.N.Y. 1995)

[39] *State v. Brooks*, 2013 WL 4051049, at *6 (Del. Super. July 30, 2013), aff'd, 132 A.3d 1 (Del. 2016)

[40] *Id.*

[41] *Blount v. State*, 511 A.2d 1030, 1033 (Del. 1986) (quoting *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).

[42] *Jensen*, 482 A.2d at 112 (internal quotations omitted).

[43] *Id.* at 111, 112.

the warrant affidavit."[44]

An order authorizing the interception of a wire, oral, or electronic communication must also include "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed, why such procedures reasonably appear to be unlikely to succeed if tried, or why such procedures would be too dangerous if tried."[45] The order may issue only if the Judge determines that "[n]ormal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."[46] In order to show that traditional methods would not likely succeed, "an affidavit must allege specific circumstances that render normal investigative techniques particularly ineffective."[47] However, "[b]oilerplate assertions that are unsupported by specific facts relevant to the particular circumstances of [the] case are not sufficient."[48] Wiretap statutes implicate an intrusion into a person's constitutionally recognized right to privacy and thus should be strictly interpreted.[49]

A literal reading of the statute reveals that a judge must find normal investigative procedures have failed, or *reasonably* appear unlikely to succeed, or are too dangerous. Affidavits explaining the prospective or retroactive failure of several reasonable investigative techniques will suffice.[50] Judges are given broad discretion when issuing

---

[44] *Id.* at 111 (citing *U.S. v. Ventresca*, 380 U.S. 102, 109 (1965)).

[45] 11 *Del. C.* § 2407(a)(3).

[46] 11 *Del. C.* § 2407(c)(1)(c); *U.S. v. Landeros-Lopez*, 718 F. Supp. 2d 1058, 1063 (D. Ariz. 2010).

[47]*Landeros-Lopez*, 718 F. Supp. 2d at 1065 (citing *U.S. v. Blackmon*, 273 F.3d 1204, 1210 (9th Cir. 2001)).

[48] *Id.*

[49] *State v. Jock*, 404 A.2d 518, 520 (Del. Super. 1979).

[50] *U.S. v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978).

a wiretap order, and the "government's burden of establishing compliance is not great."[51]  The necessity requirement is not designed "to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques."[52]  "A wiretap order should not be invalidated 'simply because [defendants] are able to suggest post factum some investigative technique that might have been used and was not.'"[53]

## 2.  The Affidavits

### (302) 382-7892 – Target Defendant: McDonald

On August 17, 2015, the State acquired an Order for interception of communications on (302) 382-7892, which was the number primarily used by McDonald.  The 7982 Affidavit is 53 pages containing sufficient particularized facts to establish probable cause and necessity. As discussed, the affidavit is broken into various sections: introduction of the affiants, introduction to the investigation, identities of those believed to be intercepted (Kevin M. McDonald, Frank R. Lovett, Amanda Pollard, and Abdul T. White), short summaries of the confidential informants ("CI") used during the investigation, the geographical considerations of Unity Lane, investigation and probable cause, need for interception, physical surveillance, search warrants, use of Attorney General Subpoenas, investigation through the use of confidential informants, undercover officers, and controlled purchases, other methods of potential investigations and their effectiveness, and finally a section on minimization.

---

[51] *Id.*

[52] *State v. Perry*, 599 A.2d 759, 764 (Del. Super. 1990) (citing *U.S. v. Alfonso*, 552 F.2d 605, 611 (5th Cir. 1977) (internal quotations omitted)).

[53] *Perry*, 599 A.2d at 764 (quoting *Hyde*, 574 F.2d at 867).

The 7892 Affidavit contains significant information regarding the investigation of the Organization. For instance, it contains the criminal backgrounds of each targeted individual, information regarding CI activity and controlled drug purchases from McDonald himself. Furthermore, the 7892 Affidavit explains what the officers observed during various attempts at physical surveillance. The long-term investigation into McDonald, Lovett, and the Organization, and other facts alleged, convinces this Court that the issuing Judge had a substantial basis to believe that probable cause exited. Although there is information dating back to 1992, this Court finds that such older information is not stale because it provides context into the investigation of McDonald, Lovett, and the Organization.

Moreover, the affidavit provides much more recent and specific information establishing probable cause that (1) McDonald is currently committing drug crimes, and (2) that communications regarding these crimes will be intercepted on the 7892 phone line. For instance, included in the warrant application, is the statement that a DSP detective overheard a 7892 call involving a drug transaction. Furthermore, a pen register confirmed that the line at issue had extremely high usage, consistent with drug operations. After considering the affidavit in a flexible and practical manner, and considering it as a whole rather than on the basis of its separate components, the Court finds that the issuing Judge properly found probable cause at the time the wiretap order was issued.

Furthermore, it is clear from the record that the affiants supplied a full and complete statement as to whether or not other investigative procedures have been tried and failed, why such procedures reasonably appear to be unlikely to succeed if tried, or why such procedures would be too dangerous if tried. The affiants described the difficulty in conducting physical surveillance of Unity Lane, where a great deal of drug

activity occurs, including operations of the Organization, and how physical surveillance, although valuable, was not enough to identify all of the members and associates of the Organization as well as the stash locations and suppliers. Furthermore, it clearly explains as to why interviews of suspects, arrests, search warrants and among other investigative techniques, would not be sufficient because they would alert the targets and impair the investigation. It details what methods were undertaken and what they yielded, as well as adequately explains their limitations. For these reasons, the Court finds that the necessity for interception has been sufficiently justified as well. Accordingly, Defendants' motions to suppress evidence derived from the 7892 wiretap is **DENIED**.

### (513) 264-4266 – Target Defendant: K.A.McDonald

Defendant K.A.McDonald, along with Defendants Felton, and White, challenge the sufficiency of probable cause and necessity for the 4266 Affidavit in support of the respective wiretap applications. Defendant K.A.McDonald argues that the sum total of justifications for getting a wiretap on 4266 were six phone calls between K.A.McDonald and McDonald, intercepted through the 7892 wiretap. Four of those calls were alleged to be drug related. Defendant asserts that the four calls were completely innocent and unrelated to drug activity. Defendants asserts that there was extensive investigation into McDonald, yet there was little to no information regarding K.A.McDonald other than his identification by social security number and the six phone calls referenced in the 4266 Affidavit. Defendants emphasize that other than these calls, the 4266 wiretap application and affidavit included primarily boilerplate language that was copied and pasted from the 7892 Affidavit.

The probable cause issue linking the 4266 line to drug activity presents the most narrow probable cause issue in this case regarding any of the affidavits. Namely, the

slang terms overheard in the four calls either provided probable cause or they did not. The State relies upon these slang terms translated by the affiants in arguing that they are direct references to drug activity. Defendant K.A.McDonald, on the other hand, points to the various terms used during intercepted conversations between McDonald and K.A.McDonald, and asserts that those communications were obviously innocent or misconstrued by the affiant as being drug related. Namely, Defendant points to the use of "jawns," stating that law enforcement alleged this to mean marijuana when it really means any "thing." Further, Defendant discusses how McDonald refers to a man named "Reggie", and refers to him as "Big." Finally, Defendant points to two other communications that law enforcement believed to be drug related, but Defendant asserts were about the dogs that McDonald and K.A.McDonald raise and sell. Defendant K.A.McDonald argues that these facts fall short of being sufficient for a finding of probable cause.

Defendants Felton and White also point to the vernacular used in the communications intercepted between McDonald and K.A.McDonald. Defendants argue that the callers repeated use of terms such as "jawns," "green ones," "reggie," "O," "girls," "females," "pucks," and "bread" are innocent, and offer their personal interpretations of those terms.

In support of their argument regarding the lack of weight to subscribe to these statements, the Defendants cite generally to *United States v. Garcia*, stating that the inclusion of such jargon cannot contribute to a finding of probable cause because the affiants failed to indicate that they have any experience or training in linguistics, phraseology, cryptology, semiotics, or any other field relevant to coded language.[54]

---

[54] *U.S. v. Garcia*, 752 F.3d 382, 398 (4th Cir. 2014).

*Garcia*, however, is distinguishable. The issue before the Fourth Circuit Court in that case was the admission of testimony at trial by a federal agent who was called as a decoding expert, for various coded words and phrases within communications that were intercepted through wiretaps.[55]   Defendant was convicted, and then appealed his conviction, arguing that the court's admission of the decoding expert was in error.[56] The court in *Garcia* found that the district court below did not abuse its discretion in qualifying the Agent as an expert, based on her five years of experience, her multitude of wiretap monitoring shifts, and the fact that her job required her to work in close proximity with drug users on a daily basis.[57] However, the court there also found that the Agent's testimony was fraught with error, failing to reliably apply her methodology, contradicting her own interpretations, and her failure to state on the record adequate foundation for many of her specific interpretations.[58]  Here, a finding of probable cause only requires a showing of fair probability and does not require the same rigorous gatekeeper analysis necessary after a full evidentiary hearing.  Namely, a four corners analysis of an affidavit does not require a formal *Daubert* review when the attesting officer adequately explains his training and experience that gives him the basis for his interpretation of drug vernacular.

More on point is the Third Circuit decision in *U.S. v. Kaplan* that established that "[s]tatements in an affidavit may not be read in isolation, the affidavit must be read as a whole" and that "[t]he issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers."[59] As in the case at hand,

---

[55] *Garcia*, 752 F.3d at 385-89.

[56] *Id.* at 384.

[57]  *Id.* at 391.

[58] *Id.* at 391-92.

[59] *U.S. v. Kaplan*, 526 F. App'x 208, 212 (3d Cir. 2013)

*Kaplan* involved an investigation into a drug trafficking operation where investigators obtained information through the use of wiretaps.[60] The intercepted communications "were frequent, cryptic, and repeatedly used code language, such as referring to a particular meeting location as "where we go to sleep at," referring to Kaplan as "whatchacallit," and referring to drug transactions as "kick it." The affiants explained that the use of this jargon showed that the speakers were experienced drug traffickers who understood the need to be cautious."[61]

Likewise, in *United States v. Booker,* a Federal District Court held that "[c]ourts considering wiretap applications are allowed to rely upon the reasonable interpretations given by experienced law enforcement affiant-agents as to the code, slang or obtuse language used by those persons engaged in allegedly conspiratorial communications."[62] *Booker* was another case where law enforcement relied heavily upon coded conversations that were then interpreted by law enforcement to support a finding of probable cause to authorize a wiretap.[63]

Here, Affiant Vernon has an extensive history in the Kent County Drug Unit and has received specialized drug training. Affiant Vernon has also had experience in an undercover capacity, has authored and assisted in the execution of numerous search warrants, as well as six other wiretap investigations. He provides a detailed explanations of his training and experience in drug investigations and a detailed interpretation of drug related slang overheard on the 4266 line conversations with the 7892 line. Like in *Kaplan* and *Booker*, Affiant Vernon's general reliability as an expert

---

[60] *Id.* at 210.

[61] *Id.* at 213.

[62] *United States v. Booker*, 2013 WL 2468694, at *17 (N.D. Ga. June 7, 2013).

[63] *Id.*

in narcotics to give his opinion as to the meaning of coded language, has been established. Therefore, like in *Kaplan* and *Booker*, the magistrate reasonably relied upon Affiant Vernon's interpretations of the intercepted communications and coded conversations. After considering the affidavit in a flexible and practical manner, and considering the totality of the circumstances, the Court finds that probable cause existed at the time the wiretap order was issued.

Defendants K.A.McDonald, Felton, and White next argue that Affiant Vernon did not provide a full and complete statement of necessity, as required by 11 *Del. C.* § 2407. In particular, Defendants cite *United States v. Heilman*, which provide that "applications which use general declarations and conclusory statements or boiler plate [statements] and the absence of particulars do not meet the full and complete statement requirement."[64] Accordingly, "[s]uch generalized wiretap applications must be denied to prevent wiretapping from becoming a routine investigative recourse."[65] Furthermore, Defendants cite *United States v. Blackmon*, asserting that a wiretap application cannot stand when it makes "only general allegations that would be true in most narcotics investigations" as well as "boilerplate conclusions that merely describe inherent limitations of normal investigative procedures."[66]

Consequently, Defendant K.A.McDonald contends that law enforcement misleadingly focus on the investigative procedures used on McDonald and not K.A.McDonald. He asserts that the application for 4266 appears to be lifted almost entirely from McDonald's wiretap application for 7892. Defendant K.A.McDonald

---

[64] *U.S. v. Heilman*, 377 F. App'x 157, 186 (3d Cir. 2010) (quoting *U.S. v. Vento*, 533 F.2d 838, 849-50 (3d Cir. 1976)).

[65] *Id.* (quoting *Vento*, 533 F.2d at 850).

[66] *U.S. v. Blackmon*, 273 F.3d 1204, 1210 (9th Cir. 2001).

contends that there was no explanation provided as to why normal investigation, such as physical surveillance, could not be conducted on K.A.McDonald. Finally, K.A.McDonald points to the statement in the 4266 affidavit stating that "K.A.McDonald may or may not be a high level drug trafficker at this time." Defendant contends that this statement underscores the fact that no investigation was conducted regarding K.A.McDonald.

Defendants Felton and White contend the same points, with some additional support. Defendants, in their motion to suppress, compare the language of an unrelated wiretap affidavit in a completely unrelated case, to the 7892 affidavit, as support in arguing that the language is boilerplate and conclusory. Defendants Felton and White point to similarities between the affidavits, concluding that twenty-one out of thirty-three paragraphs contain significantly similar boilerplate language. Furthermore, seven of the twelve categories are nearly identical. Finally, Defendants Felton and White contend that traditional investigative methods could have been expected to prove useful in the course of investigation. To support that contention, Defendants allege that physical surveillance allowed law enforcement to identify various suspects, motor vehicles, and physical locations used as drug and money storage locations. Furthermore, they contend that the use of CIs and undercover law enforcement has provided investigators with valuable information. These Defendants cite the holding in *Blackmon* to support their contentions.

However, in *Blackmon*, the affidavit was found to be boilerplate and generic because the particularized information was purged from the affidavit because of material misstatements and omissions.[67] There, the defendant was indicted following

---

[67] *Id.* at 1209.

a narcotics investigation that utilized wiretaps and investigated multiple suspects.[68] Prior to trial, defendant moved to suppress any wire-tap related evidence, alleging that the application failed to satisfy the necessity requirement, and also sought a hearing pursuant to *Franks v. Delaware*.[69]  The District Court denied both and then convicted the defendant.[70] On appeal, the United States Court of Appeals for the Ninth Circuit found that, pursuant to *Franks v. Delaware*[71], the affidavit, in the necessity portion, contained misstatements in reckless disregard for the truth.[72]  Therefore, the court held that those statements should be excluded from the affidavit in determining probable cause and necessity.[73]  The court there then considered what was only the remaining boilerplate repetitive language when determining  "whether upon review of this application, purged of its misstatements, a reasonable issuing judge would find that the application nonetheless conforms to the [necessity] requirements."[74]  The court held that the purged affidavit, on its face, failed to meet the full and complete statement requirement for a wiretap application.[75]

*Heilman*, cited by the Defendants, includes supportive language for the

---

[68] *Id.* at 1206.

[69] *Id*.

[70] *Id.*

[71] *Franks v. Delaware*, 438 U.S. 154 (1978) (holding that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was  included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided)

[72] *Blackmon*, 273 F.3d at 1209.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 1209-10.

defendants but does not support their argument in application. Namely, in that case, defendants were charged and convicted of drug trafficking related charges, as members of the Breed, an organization with many members. During the investigation of the Breed, law enforcement sought and obtained wiretaps for two phones used by one defendant and one phone used by a second defendant. Those two defendants contend that "the government failed to make a facial showing, within the four corners of the affidavits, to establish necessity for three separate wiretaps."[76] The defendants moved to suppress evidence from the wiretaps, arguing that the application contained boilerplate recitations and conclusory language about the limitations of certain investigative techniques.[77] Defendants further contended that normal investigative tools, including surveillance and informants, have been successful. The District Court denied defendants' motions to suppress, finding that necessity had been appropriately established.[78] The Third Circuit, in *Heilman,* reviewed the affidavit *de novo* to determine if the wiretap application contained the requisite statement of necessity.[79] In doing so, the Court recognized that "[t]he Government does not have a 'great' burden in proving necessity, because it need not prove to a certainty that normal investigative techniques will not succeed, but rather it needs only to show that such techniques reasonably appear to be unlikely to succeed if tried. The affidavit need only establish a "factual predicate" for why other investigative techniques are not sufficient."[80]

Furthermore, the Third Circuit held that "the issuing court should take into account affirmations based on the specialized training and experience of law

---

[76]*Heilman*, 377 F. App'x at 185.

[77] *Id.* at 186.

[78] *Id.*

[79] *Id.* at 185.

[80] *Id.* at 185-86 (citations omitted).

enforcement officers."[81]  The *Heilman* Court  held that the District Court did not abuse its discretion by finding necessity and denied the defendants' motions to suppress.[82] The Court reasoned that the affiant explained how normal investigatory tools would be insufficient to aid law enforcement in obtaining the information they need to locate co-conspirators, the supply source and how deliveries occur.[83]  Furthermore, the affiant submitted that physical surveillance was dangerous because the organization members were aware of their surroundings and would likely be able to identify undercover vehicles used for surveillance.[84]  Additionally, "[t]he fact that law enforcement had some success using physical surveillance does not render a wiretap per se unnecessary."[85]  The Third Circuit held that "[w]e do not require law enforcement to prove that a certain investigative approach is useless to pursue a wiretap; it is only obligated to give a full explanation as to why a technique is impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues."[86] For the aforementioned reasons, the court in *Heilman* found that the wiretap application contained a full and complete statement of necessity.[87]

Furthermore, this Court, in *State v. Dollard*, held that a short time between warrant applications does not preclude a finding of necessity. There,  a wiretap was upheld even though the wiretap order was issued only six days after learning of the defendant Dollard's involvement in an ongoing investigation of a suspected drug dealer

---

[81] *Id.* at 186.
[82] *Id.* at 187.
[83] *Id.*
[84] *Id*.
[85] *Id.*
[86] *Id.*
[87] *Id.* at 188.

named Galen Brooks.[88]   As the Defendants in the case at hand, Dollard argued that the affidavit supporting the wiretap application for his telephone contained the same recitation of normal investigative techniques that were used in the Brooks wiretap affidavits, and that the State "cannot establish that other normal investigative techniques would have been futile or too dangerous without a separate and independent investigation of Dollard."[89]   Dollard claimed it was impossible to conclude that traditional techniques had been tried and failed during the short period between the discovery of his involvement with Brooks and the application for a wiretap warrant on his telephone.[90]   The Court noted that

> [a]lthough much of the evidence referenced to establish necessity in Dollard's wiretap warrant was also referenced in Brooks' warrants, it was reasonable for the authorizing Judge to conclude that other normal investigative techniques would also fail with regard to Dollard, because Dollard belonged to the same secretive drug organization as Brooks. The fact that only six days had passed between the time that the police became aware of Dollard and when they applied for a wiretap warrant is immaterial if the police can establish that normal investigative procedures would be futile.[91]

The Court then held "it is clear that Dollard, having been identified in the affidavit as a Brooks' drug supplier, was believed to have become part of a large drug conspiracy that the police had been investigating for years."[92]

The Defendants are correct in that much of the information in the 4266 Affidavit regarding the investigation and need for interception is identical to that of the 7892

---

[88] *State v. Dollard*, 2013 WL 4080311, at *4 (Del. Super. July 30, 2013).

[89] *Id.*

[90] *Id.* at *3.

[91] *Dollard*, 2013 WL 4080311, at *4.

[92] *Id.*

43

Affidavit. However, as in *Dollard*, both Affidavits are for the same investigation and apply to the same larger Organization. It is therefore natural to include much of the same information in subsequent affidavits. This information cannot automatically be considered stale and irrelevant when considering the nature of the criminal activity alleged. Further, the 4266 Affidavit includes additional facts relating to necessity for this subsequent warrant. Namely, the affidavit alleges specifically as to K.A.McDonald, that there are no undercover officers or CIs available that could conduct direct purchases of narcotics from him. As to trash pulls, the affidavit cites the presence of dogs at K. A. McDonald's residence that would make it too difficult or dangerous to conduct such activity.

Unlike in *Blackmon*, this affidavit was not subject to a *Franks* Hearing, and no information has been purged from this affidavit and as a result sufficient information is contained within the 4266 affidavit to establish probable cause. As in *Heilman*, the 4266 Affidavit explained how normal investigative techniques would not be sufficient to locate co-conspirators, stash locations, among other objectives of the investigation.

Because there was probable cause to believe that K.A.McDonald belonged to the same drug organization after interceptions from the 7892 Phone Line, it was reasonable to conclude that other normal investigative techniques would be too dangerous or would fair regarding K.A.McDonald. For the foregoing reasons, suppression on the grounds that the State failed meet the necessity requirement of 11 *Del. C.* § 2407(a)(3) is also denied. Accordingly, Defendants' motions to suppress any evidence derived from the 4266 application and affidavit are **DENIED**.

### (904) 495-8851 – Target Defendant: Lovett

Defendant Owens challenges the sufficiency of probable cause and necessity for the 8851Affidavit in support of the respective wiretap application. The motion to

suppress evidence gathered from the wiretap on 8851 contains the same arguments as in the motions to suppress evidence gathered from the wiretap on 7892 and 4266. Furthermore, Defendant Owens asserts that the 8851 Affidavit contains false or inaccurate misrepresentations with reckless disregard for the truth, requesting a *Franks* Hearing. In support of this contention, Defendant Owens points to an error in identifying the primary user of the 8851 Phone Line. Law enforcement believed Lovett was the primary user of the 8851 Phone line, however, it was later discovered that Owens was the primary user. Owens asserts that there has been no attempt to rectify the error, yet law enforcement continued intercepting the communications on the 8851 line.[93]

The "investigation and probable cause" portion of the affidavit in support of a wiretap on 8851 incorporates the 7982 Affidavit by reference. In addition, it adds details of telephone calls and surveillance involving Lovett and McDonald, as well as unknown associates. Furthermore, the 8851 Affidavit provides specific details for the 8851Phone Line, with relevant facts included in additional to those provided in the 7982 Affidavit. The telephone conversations between Lovett and McDonald provided probable cause that both were part of a larger drug conspiracy that had been under investigation for a much longer time period and that the 8851 phone line was used in furtherance of this conspiracy.

The fact that the named individual for the 8851 Phone Line was incorrect does not deter from the fact that the phone line itself was the primary target, not the individual. It is not a requirement for the issuance of a warrant that the owner of the

---

[93] Defendant Owens raises this issue in a separate motion. While not citing *Franks*, the standard forwarded by Defendant in his argument in that motion is the same as required by *Franks*. This argument will be addressed by separate order.

line even be known.[94] The phone line was intercepted on other authorized wiretaps and was connected to criminal activity, without regard to who owned the number. Furthermore, because the target of the 8851 Affidavit was Lovett, the investigation described in the 7892 Affidavit applied to Lovett as well. The fact that the 8851 Affidavit is fairly similar in parts to the 7892 Affidavit does not render the 8851 Affidavit inappropriately generic and boilerplate. The same investigation and facts in the 7892 Affidavit apply to Lovett, and therefore are sufficient to support a finding of probable cause for the 8851 Affidavit. After considering the affidavit in a flexible and practical manner, and by a totality of the circumstances, this Court finds that probable cause existed at the time the wiretap order was issued.

Regarding suppression on the grounds that the State failed to meet the necessity requirement of 11 *Del. C.* § 2407(a)(3) , for the same reasons discussed *supr*a for the 4266 Affidavit, as well as those discussed *supra* regarding the 7892 Affidavit, this Court is convinced that the necessity for interception has been sufficiently provided by Affiant Vernon. Lovett, the target of the 8851 warrant application, resided at Unity Lane, where numerous attempts at surveillance were conducted. Affiant Vernon sufficiently explained how the community of Unity Lane makes any form of surveillance or investigation unlikely to succeed due to the fact that the community is very aware of its surrounding. Accordingly, as to the 8851 warrant, there is a sufficient showing of necessity. Defendants' motions to suppress any evidence derived from the 8851 application and affidavit are also **DENIED**.

### (615) 571-4038 – Target Defendant: K.A.McDonald

Various Defendants challenge the sufficiency of probable cause and necessity

---

[94] *See* 11 *Del.C.* § 2407(a)(1)c(recognizing that the affidavit contain "[t]he identify of the person, if **known** . . .")(empahsis added).

46

for the 4038Affidavit in support of the respective wiretap application. Defendants' motions to suppress evidence gathered from the wiretap on 4038 contain the same arguments, discussed above. The facts and legal authority discussed previously, when applied to the affidavit for this warrant, clearly establishes probable cause.

Regarding suppression on the grounds that the State failed to meet the necessity requirement of 11 *Del. C.* § 2407(a)(3), for the same reasons discussed *supr*a, the Court is convinced that the necessity for interception has been sufficiently provided by Affiant Vernon. Because of the short time frame between the affidavits, being one day, it would be unlikely that investigation methods would have yielded more positive results than when the 4266 Affidavit was authored. The investigation involved the same ongoing investigation. Therefore, it was reasonable for the issuing Judge to find that a full and complete statement of necessity had been appropriately provided. Defendants' motions to suppress any evidence derived from the 4038 application and affidavit are **DENIED**.

### *(302) 233-4375 – Target Defendants: Lovett and then Williams*

Defendants Williams, Smith, and Owens challenge the sufficiency of probable cause and necessity for the 4375 Affidavit in support of the respective wiretap application.[95] The motion to suppress evidence gathered from the wiretap on 4375 contains many of the same arguments used in the motion to suppress evidence gathered from the wiretap on 4038, 7892, 4266, and 8851. Additionally, Defendants Smith and Owens contend that Affiant Vernon summarized intercepted communications, instead of providing direct quotes or transcripts. Defendants also contend that there is no indication that Affiant Vernon had the requisite experience or training to engage in an

---

[95] Defendant Smith also alleges that a *Franks* hearing is necessary regarding the 4375 warrant. This issue will be discussed in a separate order.

accurate linguistic interpretation.

As to Defendants' challenge regarding probable cause, the affidavit in support of a wiretap on 4375 incorporates the 7982 and 8851Affidavits by reference. In addition, it adds details of telephone calls and surveillance involving McDonald, Lovett, and an unknown male regarding various conversations about drugs. The communications intercepted referenced various coded terms such as a "bun" and "forty of hand." Affiant Vernon advised that a "bun" was a common street term for a bundle of heroin, and "forty of hand" indicated $40 piece of cocaine. Other jargon was used such as a "log" which Affiant Vernon advised to mean ten bundles of heroin. As previously discussed, Affiant Vernon has substantial experience investigating narcotics and monitoring wiretaps. It was reasonable to rely on his experience and training to interpret these intercepted communications.

Furthermore, in an intercepted conversation between Lovett and McDonald regarding drugs, Lovett told McDonald to contact (302) 233-4375 for further contact with him. Affiant Vernon stated in the 4375 Affidavit that this number was believed to be Lovett's secondary contact number for high scale clientele and suppliers. The intercepted communications indicated that the 4375 Phone Line was directly connected to illegal activity. The intercepted telephone conversations established that Defendants and the unknown male were part of a larger drug conspiracy that had been under investigation for a much longer time period. After considering the affidavit in a flexible and practical manner, and by a totality of the circumstances, this Court finds that probable cause existed at the time this wiretap order was issued.

Likewise, after review of the facts alleged in the affidavit, in light of the previously discussed authority, suppression on the grounds that the State failed to meet the necessity requirement of 11 *Del. C.* § 2407(a)(3) is also denied. This affidavit

targeted Lovett, who has been a target of the investigation from the beginning. Therefore, the investigation techniques into Lovett had already proved unsuccessful in various ways, as discussed *supra*. The burden on law enforcement to provide a full and complete statement of necessity is not great, and given the significant facts stated as to Lovett, this Court finds that the necessity requirement as been met.

As to the second application and affidavit for the 4375 Phone Line, the primary target was shifted to Williams after he was identified as the individual primarily using the number. As discussed *supra*, the phone line was unquestionably linked to criminal activity through previous intercepts from authorized wiretaps, so regardless of who the phone line belonged to, there was probable cause to believe the phone line itself was involved in criminal activity. Furthermore, information in the second 4375 Affidavit was added that was not present in the original affidavit. The initial wiretap of 4375 intercepted various conversations between Williams and K.A.McDonald regarding various firearms. Other conversations intercepted included whether Williams had "bud," described to be marijuana, and "half a ball," described to be a quantity of cocaine, and also a if Williams had a "girl," which he did not. These conversations indicate that the phone line was probably connected to criminal activity, regardless of the fact that someone else was the primary user of the line. Furthermore, a criminal history of Williams was provided in the new 4375 Updated Affidavit. Williams had a criminal history ranging from 2005 to 2013, with various drug charges, as well as providing false statements to law enforcement and possession of a firearm by a person prohibited charges.

As to necessity, the 4375 Updated Affidavit addressed the separate investigative techniques as applied to Williams' circumstances. The Court finds that the issuing Judge was justified in finding necessity as to the new application regarding Defendant

49

Williams as well. Consequently, Defendants' motions to suppress evidence derived from the 4375 applications and affidavits are **DENIED.**

## (954) 809-4794 – Target Defendant: Dukes

Defendants Smith challenges the sufficiency of probable cause and necessity for the 4794 Affidavit in support of the respective wiretap application. The motion to suppress evidence gathered from the wiretap on 4794 contains the same arguments presented by Defendants for the wiretaps on 4375, 4038, 7892, 4266, and 8851.[96]

The "investigation and probable cause" portion of the affidavit in support of a wiretap on 4794 incorporates the 7982, 8851, 4038, and 4375 Affidavits by reference. In addition, it adds details of telephone calls and surveillance involving K.A.McDonald, Williams, and an unknown male regarding drugs and firearms. In particular, K.A.McDonald and an unknown male at the 4794 Phone Line communicated regarding "what is in stock" and if he could get an unknown quantity for "eighteen-two racks." Affiant Vernon, based on his experience in the field, opined that the conversation was regarding high grade marijuana, and that a rack meant a thousand dollars, and "eighteen-two" amounted to $18,200. The communications further lead law enforcement to observe two potential transactions between Dukes and K.A.McDonald. During the second potential transaction, Dukes was positively identified by the observing detective and was driving a vehicle registered in his name. Furthermore, GPS tracking of K.A.McDonald's vehicle indicated that K.A.McDonald was in the same area as Dukes, which was consistent with communications intercepted on K.A.McDonald's phone lines.

Furthermore, the 4794 Affidavit provides specific details for the 4794 Phone

---

[96] Defendant Smith's *Franks* related arguments will be discussed in a separate order.

Line, where there is information that differs from that of the previous affidavits. For instance, the 4794 Affidavit provides a criminal background of Dukes, which included drug charges. The telephone conversations established that Defendants and the unknown male were part of the Organization that had been under investigation for a much longer time period. After considering the affidavit in a flexible and practical manner, and considering the totality of the circumstances and the authority previously discussed, the Court finds that probable cause was set forth in the 4794 affidavit.

Regarding suppression on the grounds that the State failed meet the necessity requirement of 11 *Del. C.* § 2407(a)(3), for the same reasons discussed *supr*a for the 4735, 4038, 8851 and 4266 Affidavits, as well as those discussed *supra* regarding the 7892 Affidavit, this Court is convinced that the necessity for interception has been sufficiently provided by Affiant Vernon. In addition, the 4794 Affidavit states that law enforcement were unsure of where Dukes was actually residing, so conducting trash pulls was not possible. It logically follows that physical surveillance would also be unlikely if the suspect cannot be physically located. Furthermore, the affidavit discussed how GPS tracking has been successfully installed on K.A.McDonald's vehicle. However, although law enforcement had observed Dukes operating two separate vehicles, the Mercedes and Oldsmobile, it was unknown to them at the time if he had regular access to the vehicles, therefore GPS tracking of Dukes would not likely result in valuable information.

The Affidavit further states that surveillance had observed Williams operating a blue 2006 Audi A8, and a GPS order would be drafted. This evidences that investigation was still ongoing and that a wiretap was not the initial stage of the investigation. For these reasons, this Court finds that Affiant Vernon provided a full and complete statement of necessity. Defendants' motions to suppress any evidence

51

derived from the 4794 applications and affidavits are **DENIED**.

### C. The Court does not find the geographic argument raised by Defendants convincing; therefore, suppression pursuant to 11 *Del C.* § 2407(c)(3) is DENIED.

The final issue examined in this Opinion is a geographical issue raised regarding the interpretation of 11 Del. C. § 2407(c)(3). Certain Defendants raise the issue as to whether Section 2407 allows for the *interception* of a cellular communication when that communication is intercepted in the State, but has neither been sent nor received by a portable communication device that is located in the State.

The statute's language being challenged states that an order "may authorize the interception of communications sent or received by a mobile telephone anywhere within the State so as to permit the interception of the communications regardless of whether the mobile telephone is physically located within the jurisdiction of the court in which the application was filed at the time of the interception."[97] Defendants Felton and White argue that the wiretap applications requested interceptions without geographical limitation. Defendants argue that such a broad order violates 11 *Del. C.* § 2407(c)(3), and that law enforcement should only be permitted to intercept communications that were sent from or received from within the State of Delaware.

The Superior Court has previously considered this particular issue and has held that "the consideration of legislative intent, the consequences of different particular constructions of the statute, and abundant persuasive case law lead this Court to adopt the same federal gloss that has been adopted by so many other courts.[98] Namely, the Superior Court held that an otherwise valid wiretap warrant may authorize the

---

[97] *11 Del. C.* § 2407(c)(3).

[98] *State v. Brinkley*, 132 A.3d 839, 851 (Del. Super. 2016).

interception of signals within the State, regardless of the location of the phones.[99] This Court finds the *Brinkley* Court's interpretation to be reasonable and persuasive and applies it here. Moreover, in this instance, no Defendant has alleged with specificity what communications, if any, were intercepted while a caller or recipient was out of State. Therefore, Defendants' motions to suppress on the grounds that the intercepted communications were outside of Delaware's territorial jurisdiction is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, after a four corners review of the respective affidavits, the Court finds the intercepted communications of 7982, 4266, 8851, 4038, 4375, 4794 were lawfully acquired and the various motions of the captioned Defendants to suppress evidence obtained as a result of these intercepted communications are **DENIED**.

**IT IS SO ORDERED**

/s/Jeffrey J Clark

---

[99] *Brinkley*, 132 A.3d at 97.